Yvonne P. PARK, Plaintiff,

v.

Myron B. THOMPSON, Director, Department of Social Services and Housing, et al., Defendants.

Civ. No. 72–3605.

United States District Court, D. Hawaii.

March 23, 1973.

---

784

James Blanchfield, Brook Hart, Hart, Sherwood, Leavitt, Blanchfield & Hall, Honolulu, Hawaii, for plaintiff; American Civil Liberties Union, New York City, of counsel.

Olen E. Leonard, Jr., Deputy Atty. Gen., George Pai, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for defendants.

SAMUEL P. KING, District Judge.

Plaintiff is an unmarried female, born in Hawaii on July 18, 1940, of Hawaiian-Korean-Chinese ancestry. On November 8, 1971, during a trial in the First Circuit Court, State of Hawaii, with two codefendants for murder and attempted robbery, both in the first degree, committed on May 11, 1970, she pleaded guilty to the attempted robbery

count. The murder charge was dismissed. On November 15, 1971, she was sentenced to imprisonment at hard labor for a maximum term of 20 years[1] to be served consecutively to any other term then being served. On April 28, 1972, the state Board of Paroles and Pardons fixed her minimum term of imprisonment for this offense at 2½ years.[2]

At the time of her latest indictment, plaintiff was already in custody serving a minimum of 2 years from June 5, 1970, after revocation of parole following incarceration which had commenced on February 16, 1968, under a sentence for a prior felony.[3] While technically committed to the custody of the state Director of Social Services for imprisonment at hard labor, plaintiff had been confined at the Honolulu Jail and not at the Hawaii State Prison because there were no facilities at the prison for women.[4]

Early in 1972, plaintiff was advised that arrangements were being made to move her to Terminal Island, a federal prison in California,[5] pursuant to a general policy of transferring female prisoners with minimum sentences in excess of 2 years to out-of-state prisons with suitable rehabilitative programs for women inasmuch as there were no rehabilitative facilities for long-term female prison inmates in Hawaii.[6]

In May 1972, plaintiff petitioned the state circuit court for an injunction to forestall her removal from Hawaii. The circuit court entered summary judgment

1. At that time, the sentencing state judge's options were limited to probation (where permitted) or imprisonment for the maximum number of years (where specified). HRS §§ 711–76 and 711–77. Beginning January 1, 1973, a new code authorized new but similar sentencing procedures along the lines recommended by the A.L.I.'s Model Penal Code.

2. Minimum sentences were fixed by the Board initially during the first 6 months of a prisoner's term. HRS § 711–76. Procedures under the new code provide for a hearing. Hawaii Penal Code Sec. 669. See note 1.

3. Plaintiff's criminal record extends over a period of 20 years.

4. At one time, there was a women's ward at the prison. The present situation is an "interim" condition pending reorganization and modernization of penal facilities and programs which has been "imminent" for the past 10 years or more.

5. The transfer of a state prisoner to a federal prison is effected pursuant to HRS § 353–18 and an agreement between the state of Hawaii and the United States Department of Justice. See 18 U.S.C. § 5003.

6. See note 4.

against her on July 7, 1972. She appealed. She was unsuccessful in attempting to secure an injunction from the state circuit court or a stay from the state supreme court pending appeal, but the circuit judge continued a temporary restraining order to July 14, 1972.

While her state appeal was in process, and on July 18, 1972, plaintiff presented her case to this court. Her complaint alleges violations and deprivations of her rights under the Constitution and laws of the United States and two pendent claims under state laws. Declaratory and injunctive relief was sought pursuant to 28 U.S.C. § 1343(3) and (4), 28 U.S.C. §§ 2201 and 2202, 42 U. S.C. § 1983, and F.R.Civ.P. Rule 57. An order to show cause issued returnable August 4, 1972.[7]

Although defendants had been served through their attorneys with the pleadings in this matter before 9:00 A.M. on July 19, 1972, no temporary restraining order had been issued. On July 20, 1972, plaintiff was transferred to Terminal Island, California. On February 24, 1973, she was further transferred to the Federal Reformatory for Women at Alderson, West Virginia.

Defendants moved for dismissal or abstention because of the pending state proceedings. On the state of the record at the time, this court entered an order on October 3, 1972, denying the motion to dismiss but granting the motion to abstain until plaintiff had completed her litigation in the state courts. On January 22, 1973, the Supreme Court of Hawaii affirmed the circuit court's grant of summary judgment against plaintiff.[8]

On February 1, 1973, defendants renewed their motion to dismiss this complaint on the grounds that the matter is *res judicata.* Plaintiff countered with a

motion to amend complaint and to treat the action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. These motions frame the issues now before the court.

Defendants' authorities support the proposition that, considered as a § 1983 action, plaintiff's claim is *res judicata* as a result of the state proceedings. See Howe v. Brouse, 422 F.2d 347 (8th Cir. 1970); Morey v. Independent School District No. 492, 312 F.Supp. 1257 (D. Minn.1969), affirmed, 429 F.2d 428 (8th Cir. 1970); Frazier v. East Baton Rouge Parish School Board, 363 F.2d 861 (5th Cir. 1966); Moffett v. Commerce Trust Co., 187 F.2d 242 (8th Cir. 1951) *(semble).* Plaintiff apparently agrees as she has not responded to this argument but instead seeks to avoid the issue by restyling her complaint so as to abandon the § 1983 claim. Not unexpectedly, defendants oppose this maneuver.

Prior to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 442 (decided February 28, 1973), there may have been some point in resisting plaintiff's motion to amend on the theory that an original petition for a writ of habeas corpus *could not* be brought in this district because:

"Whatever the rule is in other circuits, the Ninth Circuit is firmly committed to the concept that territorial jurisdiction of a District Court in habeas proceedings demands the situs of the res of habeas corpus, that is, the actual presence of both the custodian and his petitioning charge, to be within the territory of the district." Boag v. Craven, No. 72-1341 (9th Cir. February 1, 1973), slip opinion page 2.[9]

---

7. Plaintiff actually had an immediate hearing before Judge Pence on the issuance of a temporary restraining order, which was denied.

8. The decision was 3–2, with the majority filing a two-line memorandum opinion. Justice Marumoto dissented in four pages on state grounds involving the interpreta-

tion of state statutes and Justice Levinson dissented in twelve pages on state and federal constitutional grounds.

9. Defendants were relying upon Ashley v. Washington, 394 F.2d 125 (9th Cir. 1968), and George v. Nelson, 410 F.2d 1179 (9th Cir. 1969). Mead v. Meier, 449 F.2d 732 (9th Cir. 1971), Boag v.

*Braden* specifically deals with the choice of forum where a prisoner attacks an interstate detainer on federal habeas corpus, and holds that the proper forum is in the demanding state. It is clear that the same considerations that underlie *Braden* apply here. Hawaii is the most convenient forum in which to litigate plaintiff's claims. The out-of-state custodian is acting only as the agent of the State of Hawaii. Plaintiff seeks relief from alleged violations and deprivations of her rights by local officials. Any corrective action ordered can be effected by local officials.

Mead v. Meier, 449 F.2d 732 (9th Cir. 1971), would appear to be squarely on point and to the contrary. Mead was a prisoner in the custody of Meier, the warden of a federal prison in the state of Washington, by virtue of a sentence imposed in the state of Alaska. The incarceration at the federal prison was pursuant to an agreement between the state of Alaska and the United States Department of Justice. Habeas corpus jurisdiction to question the Alaska conviction was denied to the Alaska district court and granted to the Washington Western District district court.[10]

The post-*Braden* authority of *Mead* is subject to qualification. In *Mead,* the only respondent was Meier, the warden of the federal prison in the state of Washington. *Braden* would allow Mead to present his habeas claims in the Alaska district court with Alaska authorities as respondents and without the necessity of joining Meier. The Alaska authorities would be considered to be Mead's custodians under the more expansive definition of the custody requirement of the habeas statute resulting from Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), and Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and approved in *Braden.* On the other hand, Mead could still raise the same issues in the Washington Western District district court with Meier as respondent.[11] Justice Brennan was careful to note:

"Nothing in this opinion should be taken to preclude the exercise of concurrent habeas corpus jurisdiction over the petitioner's claim by a federal district court in the district of confinement. But as we have made clear above, that forum will not in the ordinary case prove as convenient as the district court in the State which has lodged the detainer. Where the prisoner brings an action in the district of confinement attacking a detainer lodged by another State, the court can, of course, transfer the suit to a more convenient forum." *Braden,* page 499 of 410 U.S., page 1131 of 93 S.Ct. note 15.

Even pre-*Braden,* this court would have jurisdiction of plaintiff's habeas corpus petition. Such jurisdiction has

---

Craven, No. 72–1341, slip opinion (9th Cir. February 1, 1973), and United States ex rel. Pebworth v. Smith, No. 72–1735, unpublished opinion (9th Cir. March 2, 1973), reaffirmed the Ninth Circuit's position. Judge Pence in Kinnell v. Warner, 356 F.Supp. 779 (D.C.Hawaii 1973), found jurisdiction where a respondent with authority to control the whereabouts of the petitioner was within the territorial jurisdiction of the court and the petitioner was not within the territorial jurisdiction of any federal court (he was aboard the aircraft carrier USS ENTERPRISE in the South China Seas).

10. Petitioner filed two separate actions, one in the Alaska district court and the other in the Washington Western District district court. The Washington case reached decision in the Ninth Circuit first. Mead v. Meier, 448 F.2d 1267 (9th Cir. 1971). The appellate court reversed the lower court's holding of no jurisdiction. The Alaska case affirmed the lower court's holding of no jurisdiction. Mead v. Meier, 449 F.2d 732 (9th Cir. 1971).

11. Where petitioner complains of custodial treatment at his place of confinement, the proper forum for any justiciable issue would, of course, be in the district of confinement.

been held to continue where the petitioner's absence was occasioned by a post-filing involuntary removal. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Ex parte Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944); Smith v. Campbell, 450 F.2d 829 (9th Cir. 1971); Bishop v. Medical Superintendent of Ionia State Hospital, 377 F.2d 467 (6th Cir. 1967); Harris v. Ciccone, 417 F.2d 479 (8th Cir. 1969), cert. denied, 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813 (1970). While it is true that the cited cases all involved actions that had commenced as habeas corpus proceedings, here the omission from the original complaint of 28 U.S.C. § 2241 as an additional jurisdictional ground and of a prayer for a writ of habeas corpus as an additional remedy should not be treated as a matter of any great significance. The alleged facts are the same, the claimed rights are the same, the demanded corrective action is the same, the areas of discovery are the same. Defendants are in no way prejudiced by the assertion of another avenue for relief.

The reverse situation was ruled on in Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), where the Supreme Court read habeas corpus petitions as also requesting relief under § 1983. See also Rodriguez v. McGinnis, 456 F.2d 79 (2d Cir. 1972), and United States ex rel. Stuart v. Yeager, 293 F. Supp. 1079 (D.C.N.J.1968), to the same effect, and McClain v. Manson, 343 F. Supp. 382 (D.C.Conn.1972), in which the court found habeas aspects in Civil Rights Act cases for purposes of allowing attorney's fees. And cf. Jones, supra, in which the petitioner was permitted to amend his pending federal habeas corpus petition to change the custodial defendants from the superintendent of the state penitentiary to the members of the state parole board after he had been paroled and removed to another state.

Finally, the only effect of a refusal to allow plaintiff to restyle her pending complaint as a petition for a writ of habeas corpus would be to put her to the trouble and expense of refiling. No principle of justice or administration requires such a result.

Considered as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the complaint is challenged by defendants on two grounds—firstly, that plaintiff has not exhausted her state remedies, and secondly, that she presents no issue related to federally protected constitutional rights of a prisoner.

█ Defendants rely on Nusser v. Aderhold, 164 F.2d 127 (5th Cir. 1947) for the proposition that the exhaustion requirement has not been satisfied until the Supreme Court has been petitioned to review the state decision. Hedberg v. Pitchess, 362 F.2d 511 (9th Cir. 1966), holds exactly the opposite and is controlling here. The First Circuit agrees with the Ninth Circuit. See Makarewicz v. Scafati, 438 F.2d 474 (1st Cir. 1971). It seems clear that Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), invited these latter holdings.

Defendants further argue that amending the complaint to request habeas corpus relief introduces an additional ground not pursued in the state courts, so that state remedies have not been exhausted until the state courts have had an opportunity to pass on this additional ground, citing United States ex rel. Pascal v. Burke, 90 F.Supp. 868 (E.D.Pa. 1950). In *Pascal*, the petitioner was denied habeas corpus relief in the state courts, and in his subsequent federal habeas corpus petition he alleged violations of the Fourteenth Amendment which had not been raised or discussed in the state proceeding. He was advised to file another state petition alleging this additional ground. Plaintiff here raised exactly the same claims in her state action as she has in her federal complaint, and the dissenting opinions of Justices Marumoto and Levinson make it clear that all of these claims were considered and decided in the state courts.

█ Defendants seem to suggest that plaintiff having asked only for injunctive and declaratory relief in the state

courts must, by virtue of 28 U.S.C. § 2254(b) and (c),[12] try again with a state habeas corpus proceeding, citing Lucas v. Michigan, 420 F.2d 259 (6th Cir. 1970) and Oliver v. California, 364 F.2d 311 (9th Cir. 1966) as authorities for this judicial recycling. *Lucas* actually held that a return to the state courts was not required where the state courts had ruled against petitioner's position on similar issues raised in a different case with different parties and it was obvious that the state courts would rule against petitioner on the issues raised in the federal complaint. *Oliver* appears to be contrary to *Lucas*, except that, after saying that anticipation of an unfavorable disposition in the state courts did not afford an excuse for failure to exhaust state remedies, the court actually held that the state interpretation of the constitutional issue was correct and therefore affirmed denial of the petition on the merits.

In any event, § 2254(c) is not to be construed as requiring repetitious applications to state courts for relief. See Brown v. Allen, 344 U.S. 443, 448 n. 3, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Mead v. Meier, 448 F.2d 1267 (9th Cir. 1971). It is the legal issues that are to be exhausted, not the petitioner.

Plaintiff's federal claims are that the transfer of state prisoners to out-of-state prisons is carried out in a manner which fails to afford the prisoner due process of law, which denies to a woman prisoner the equal protection of the laws, which results in the infliction of cruel and unusual punishment, and which infringes upon the prisoner's right to rehabilitation.

Defendants question the use of habeas corpus as a vehicle for litigating such issues, especially claims of discrimination based on sex. In Duncan v. Madigan, 278 F.2d 695 (9th Cir. 1960), the court reached the merits of the prisoner's claim in habeas corpus proceedings that he was entitled to be heard as to his place of custody and that his transfer as a Maine prisoner to the federal prison at Alcatraz denied him the equal protection of the laws. In Simon v. State of Maryland, 227 F.Supp. 588 (D.C.Md.1964), the court cited Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415 (1953), and In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149 (1894), for the settled proposition that the writ of habeas corpus is available to test the validity not only of the fact of confinement but also of the place of confinement. In Parks v. Ciccone, 281 F.Supp. 805 (W.D.Mo. 1968), the court discussed the standards to be applied when reviewing the conditions of confinement in a habeas corpus proceeding, and noted that under certain fact situations relief could be granted. In Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), in a proceeding which the court treated as a petition for a writ of habeas corpus, the court invalidated a prison regulation affecting the conduct of a prisoner and which had resulted in altered conditions of his confinement. Genovese v. Ciccone, 331 F.Supp. 1117 (W.D.Mo.1971), reaffirms the proposition that a petition for habeas corpus is a proper method of challenging the legality or constitutionality of a prisoner's place of confinement, citing numerous authorities, and suggests that relief might be granted to prevent a transfer of a federal prisoner

---

12. § 2254. State custody; remedies in Federal courts

. . . . .

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the exist-ence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. . . .

from a prisoners' medical center if there were exceptional circumstances or the denial of a federal constitutional or statutory right. In United States ex rel. Goings v. Aaron, 350 F.Supp. 1 (D. Minn.1972), Judge Neville dealt in habeas corpus proceedings with the validity of prison regulations regarding hair styles. In Capitan v. Cupp, Civil No. 72–738 (D.Ore. December 6, 1972), Judge Solomon found that a prisoner could enforce by habeas corpus proceedings a right to a hearing on charges which led to his out-of-state transfer.

■ Generally, whatever affects the quantitative or qualitative aspects of an individual's involuntary or nonconsenting confinement may be judicially reviewed in habeas corpus proceedings. Plaintiff's discrimination, equal protection, and due process claims are not put forward solely for philosophical satisfaction but also because, she alleges, the result of the alleged violations, deprivations, and infringements of her rights is that the conditions and circumstances of her confinement have become more onerous. This is clearly habeas corpus country.

Capitan v. Cupp, *supra,* Gomes v. Travisono, 353 F.Supp. 457 (D.R.I. 1973), and Barrett v. Boone, Civil Action No. 73–81–C (D.Mass. January 26, 1973), all hold that out-of-state transfers of prisoners under the circumstances of those cases involved federally protected rights. In *Capitan,* the prisoner was transferred from the Oregon State Penitentiary to the federal penitentiary at Leavenworth, Kansas, because of his supposed involvement in the narcotics trade within the Oregon prison. No hearing was held and he was never given the opportunity to disprove the allegation. Judge Solomon said:

"I find that Capitan is entitled to a hearing on the charges which led to his transfer. Limitations on the constitutional rights of prison inmates have recently been the source of considerable litigation. The courts are now holding that the procedures lead-

ing to a serious change in a prisoner's confinement must comport with at least the most basic elements of procedural due process. Clutchette v. Procunier, 328 F.Supp. 767 (D.N.D.Cal. 1971); Krause v. Schmidt, 341 F. Supp. 1001 (D.W.D.Wisc.1972); Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, 404 U.S. 1049 [, 92 S.Ct. 719, 30 L.Ed.2d 740] (1972), 405 U.S. 978 [, 92 S.Ct. 1190, 31 L.Ed.2d 254] (1972) ('[O]ur constitutional scheme does not contemplate that society may commit lawbreakers to the capricious and arbitrary actions of prison officials.' at 198).

"The right to a hearing is essential to procedural due process. Goldberg v. Kelly, 397 U.S. 254 [, 90 S.Ct. 1011, 25 L.Ed.2d 287] (1970). Goldberg has been cited as authority for granting prison inmates a full hearing on the charges surrounding a serious change in confinement status. Krause and Clutchette, *supra;* Landman v. Royster, 333 F.Supp. 621 (D.E.D.Va. 1971). I am satisfied that the transfer of a prisoner from a state institution to a federal prison 2,000 miles away from his family and his home is a 'grievous loss' which requires the imposition of some procedural safeguards.

"The task of administering a modern penal institution is a difficult one. I do not pretend to assume the role of warden. I only hold that Capitan was entitled to a hearing before the prison authorities either prior to or a reasonable time after the transfer."

In *Gomes,* eleven inmates of the Rhode Island Adult Correctional Institution were shipped out to federal and state prisons throughout the country without prior notice or opportunity to state why they should not be transferred. Judge Pettine said:

"Out-of-state transfer of Rhode Island prisoners does not in and of itself violate the Eighth Amendment's prohibition on cruel and unusual pun-

ishment. While it may be historically true that the writ of habeas corpus was intended to prevent the evils of 'transportation' of prisoners, these evils have been much diminished by the relative ease of long distance travel and communication today.

"Confinement of federal prisoners in institutions far from home is not unusual. The discretion vested in the Attorney General of the United States to confine federal prisoners in any suitable and appropriate place was upheld by the First Circuit Court of Appeals against an Eighth Amendment challenge in Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969). It is difficult to see any argument that state prisoners are entitled to greater protection under the Eighth Amendment than are federal prisoners.

"Nor do I find transfers to be cruel in the constitutional sense. Transfer is not, per se, excessive, serving no legitimate end. See Furman v. Georgia, 408 U.S. 238, 330–333, 92 S.Ct. 2726, 33 L.Ed.2d 346 (J. Marshall). However, it may be that the conditions under which transferred inmates are confined do themselves violate the Eighth Amendment and that the transferor officials may be held responsible for these conditions. . . . See Wright v. McMann, 387 F.2d 519 (2d Cir. 1967), 460 F.2d 126 (1972). . . .

"Although out of state transfers are not themselves constitutionally forbidden, the procedures and practices under which the transfers have been effectuated violate the constitutional guarantee of due process. Questions of equal protection are also involved.

"There appear to be three reasons for the involuntary transfer of inmates from the A.C.I.: discipline, prison security, and rehabilitation. As practiced at the A.C.I., all involuntary transfers, whatever the reason given, have had a punitive element. All involve loss of liberty and of property sufficient to warrant that there be some procedural safeguards followed in imposing such deprivations.
" . . .

" . . . The evidence shows that transfer radically transforms an inmate's life. . . . Transfer seriously burdens an inmate's access to counsel and the courts and impairs his parole chances.

" . . . The nature of some of the deprivations involved in long distance transfers was recognized in 1916 by Judge Morton of the United States District Court for Massachusetts. . . . in Keliher v. Mitchell, 250 F. 904 (D.Mass.1916) . . .

" . . . Whether the decision to transfer is based on a disciplinary violation, security requirements, or the rehabilitative interests of the particular inmate, the decision is based upon some perceived facts about the inmate and his behaviour. The consequences of an erroneous preliminary determination of these facts is an infringement of liberty and imposition of hardship on innocent persons.
. . .

"The minimal requirements for insuring the integrity of the decision making process are that the inmate be given notice of the charges against him or reasons for the transfer, an opportunity to respond to those charges or reasons, and if he denies the charges or disputes the reasons, an opportunity to present evidence in support of his position. . . . The inmate should be given prior written notice of the charge, should have the right to the assistance of a lay advocate, should have the right to a determination by an impartial board on the basis of substantial evidence, and should have a record of the proceedings and findings of the board. See Meyers v. Alldredge, 348 F.Supp. 807, 822–824 (M.D.Pa.1972).

" . . . A large number of transfers at once is foreseeable only in emergency situations, when special

rules would apply. See Roberts v. Pepersack, 256 F.Supp. 415, 432 (D.Md. 1966). . . .

" . . . the state has an interest in determining that transfers are not made as punishment for the valid exercise of the constitutional rights or statutory rights of that class of its citizens who are incarcerated.

"These procedural safeguards must be afforded the inmates *before* transfer except in those extraordinary situations where a valid governmental interest is at stake which justifies postponing the hearing until after the event. Boddie v. Connecticut, 401 U. S. 371, 379, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1970) . . . transfers should be periodically reviewed. . . . "

In *Barrett,* Judge Garrity found that plaintiff prisoner had demonstrated a substantial likelihood of success in his action to challenge his transfer out-of-state, and entered a preliminary injunction enjoining defendant penal authorities from so doing without notice and hearing pursuant to procedures which included:

(1) Adequate prior written notice of the charge or basis for the transfer to the prisoner and his counsel.

(2) Assistance of counsel or a lay advocate of choice in connection with the hearing.

(3) A hearing before an impartial tribunal making its determination on reliable and substantial evidence.

(4) The right to present evidence and to cross-examine witnesses.

(5) Minutes of the hearing kept and furnished prior to final decision.

(6) Written findings of fact made and furnished.

These statements and conclusions of Judges Solomon, Pettine, and Garrity are pertinent to this case.

A Maine prisoner's attempts to undo a transfer to the federal prison system [13] resulted in two cases that go contrary to *Capitan, Gomes,* and *Barrett.* He first attacked his detention at Alcatraz by federal habeas corpus petition on the grounds that the federal statute authorizing reception of a state prisoner applies only to youthful offenders and is beyond the delegated powers of the federal government. Duncan v. Madigan, 278 F.2d 695 (9th Cir. 1960). After rejecting both contentions, the Ninth Circuit Court said:

"Additional contentions that appellant was entitled to be heard with respect to his place of custody, and that his transfer denied him equal protection of the law are without basis and have no merit."

The court noted that the prisoner was complaining of the federal detention and not of the state action.[14]

Duncan then complained of the state action in a state declaratory judgment action. Duncan v. Ulmer, 159 Me. 266, 191 A.2d 617 (1963). The Supreme Judicial Court of Maine ruled against Duncan on practically every ground raised by plaintiff in this case except discrimination based on sex.[15]

---

13. Duncan's situation parallels plaintiff's herein. He was a Maine state prisoner incarcerated for a Maine offense. He was transferred to the federal penitentiary at Atlanta, Georgia, without notice and without a hearing and for reasons that reflected on his conduct. He was later transferred by federal authorities to the federal penitentiary at Alcatraz, California.

14. The court referred to Pratt v. Hagan, 273 F.2d 956 (3rd Cir. 1960) for the proposition that if the prisoner were seeking to attack state action by federal habeas corpus directed to the warden of the federal penitentiary, he would first have to exhaust his state remedies.

15. The court relied on cases dealing with intrastate transfers, stating that the con-

The Supreme Court of Hawaii apparently followed the reasoning of Duncan v. Ulmer in ruling against plaintiff.[16]

Upon reflection, I say with Judge Pettine that: "In the light of current perceptions of the requirements of due process, Duncan v. Ulmer cannot be controlling." *Gomes*, 353 F.Supp. page 467.

Hillen v. Director of Department of Social Service and Housing, 455 F.2d 510 (9th Cir. 1972), cert. denied 409 U. S. 989, 93 S.Ct. 331, 34 L.Ed.2d 256 (1972) held that the transfer of a Hawaii state prisoner to California's Folsom State Prison pursuant to the Western Interstate Corrections Compact "presents no issue related to federally protected constitutional rights of the prisoner." In 1964, Hillen was convicted of murder and sentenced to life imprisonment. About three years later he was transferred to Vacaville, California, and later to Folsom. He proceeded pro se and in forma pauperis to challenge his transfer. On February 26, 1971, in Hawaii he sought federal habeas corpus directed to state authorities. Judge Pence dismissed for failure to exhaust state remedies. Attached to the pleadings is a letter indicating that Hillen had requested transfer to a mainland institution. On August 9, 1971, Hillen refiled a federal complaint for declaratory and injunctive relief. On August 10, 1971, Judge Tavares dismissed this complaint for failure to state a cause of ac-

tion and for failure to exhaust state remedies. This ruling was the subject of the cited case.[17] Certiorari was denied by the Supreme Court on November 6, 1972. On November 12, 1971, Hillen refiled a federal complaint for declaratory relief and request for a three judge panel, attacking the constitutionality of the state statutes permitting his transfer without his consent, as required by California and Arizona statutes. On February 4, 1972, Judge Tavares dismissed this complaint on the grounds that the complaint was brought against an agency of the state, failed to present a federal question, and was frivolous. Hillen had meanwhile, in January 1972, attempted to obtain mandamus from the Ninth Circuit Court of Appeals ordering Judge Tavares to convene a three judge court. This was denied on February 17, 1972. On February 14, 1972, Hillen moved for leave to file an amended complaint, and on March 29, 1972, to file a second amended complaint. Judge Tavares entered another order dismissing the action. A motion to appeal in forma pauperis was dismissed by the Ninth Circuit Court of Appeals as frivolous. Certiorari was denied by the Supreme Court on January 8, 1973.[18] There is an indication that Hillen had attempted to seek relief from California state courts.

It is clear from the record that Hillen's claims were never adequately briefed or argued. His persistent assertion of so many legal violations and his

stitutional issues were the same, and found no due process clause violation, no equal protection clause violation, no Eighth Amendment violation, no substantive right to be near family, friends, or counsel, no prejudice to Duncan's opportunities for parole or pardon, no right to complain about a difference in the discipline and treatment between the federal system and the state system. However, the court did find a violation of the state statutes because the certificate of transfer was unsigned, and therefore ordered Duncan returned to Maine "for further execution of his sentence." By then Duncan had spent 6 years in the federal penal system.

16. Park v. Thompson, No. 5315, memorandum opinion (Hawaii January 22, 1973). See note 8. Justice Marumoto in his dissenting opinion cites Duncan v. Ulmer, *supra*, and Dwyer v. State, 449 P.2d 282 (Alaska 1969), for his conclusion that there was "no merit in the constitutional issues raised by plaintiff regarding equal protection and cruel and unusual punishment." *Dwyer*, however, held only that transfer of an Alaska prisoner to the federal penitentiary at Lompoc, California, was not per se unlawful.

17. The court reversed as to the exhaustion ruling.

18. Justice Douglas would have granted certiorari both times.

alleged participation in effecting the original transfer obviously clouded the issues. In the light of *Capitan, Gomes,* and *Barrett,* and of the history of Hillen's efforts to challenge his transfer, I interpret *Hillen* as standing only for the proposition that out-of-state transfer of a state prisoner is not per se unlawful.

I agree with Judge Pettine that cases involving intrastate transfers are inapposite here.[19] *Gomes,* 353 F.Supp. at page 467.

Plaintiff's first and second causes of action are based upon allegations of fact which, if true, might entitle her to some relief.

■ Plaintiff's third and fourth causes of action are pendent state claims based upon the Hawaii Administrative Procedures Act, HRS §§ 91–1 through 91–4, and a certain state statute relating to the handling of prisoners, HRS § 711–83. These are *res judicata* by virtue of the state proceedings.[20]

For the foregoing reasons, the motion to amend complaint and treat action filed as a petition for writ of habeas corpus is granted, and the motion to dismiss complaint is denied as to the first and second causes of action and granted as to the third and fourth causes of action.

Defendants on August 1, 1972, filed an answer to the original complaint. They will be given to April 14, 1973, to file any amended answer or return to the complaint considered as a petition for writ of habeas corpus.

19. Re intrastate transfers, see Duncan v. Ulmer, *supra,* and cases therein cited; Genovese v. Ciccone, *supra* (transfer between federal facilities) ; Lewis v. Gladden, 230 F.Supp. 786 (D.Or.1964) (transfer from Oregon State Correctional Institution to Oregon State Penitentiary) ; United States ex rel. Stuart v. Yeager, 293 F.Supp. 1079 (D.N.J.1968) (transfer from State Prison at Rahway to State Prison at Trenton) ; Bell v. Warden of Maryland House of Correction, 207 Md. 618, 113 A.2d 482 (1955) (transfer from Maryland Reformatory for Males to Maryland House of Correction) ; Hanvey v. Pinto, 441 F.2d 1154 (3rd Cir. 1971) (transfer from one wing of New Jersey State Prison at Rahway to another wing and consequent change of prison jobs).

20. The meaning and application of state statutes, specifically HRS § 353–18, 355–1, and 711–83, may be factors in determining plaintiff's constitutional claims.