**Alfred J. TAI, Plaintiff,**

v.

**Myron B. THOMPSON, Director, Department of Social Services and Housing, et al., Defendants.**

Civ. No. 74-219.

United States District Court,
D. Hawaii.

Jan. 15, 1975.

James Blanchfield, Honolulu, Hawaii, for plaintiff.

Olen E. Leonard, Jr., Deputy Atty. Gen., Ronald Amemiya, Atty. Gen., of Hawaii, Honolulu, Hawaii, for defendants.

## DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

SAMUEL P. KING, Chief Judge.

Plaintiff was convicted in Hawaii State Court and sentenced to a term in prison for life without parole. Subsequently, in 1966, he was transferred from Oahu State Prison to the custody of the Federal Bureau of Prisons and is now in federal penitentiary in Atlanta, Georgia.[1]

This action for injunctive relief[2] against the Chief Administrator for the State of Hawaii Department of Social Services and Housing and other state officials was filed on September 9, 1974, under 42 U.S.C. § 1983. Jurisdiction is conferred on this court by 28 U.S.C. § 1343.

By the original, first amended, and second amended complaints, plaintiff presents four claims. He alleges that his out-of-state transfer violated his right to due process guaranteed by the Fourteenth Amendment of the United States Constitution and that the conditions and circumstances of his continued incarceration amount to cruel and unusual punishment in violation of the Eighth Amendment.[3] He also makes two pendent claims under state laws. Defendants, without answering the complaint, moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[4]

Treating the complaint as a petition for habeas corpus, defendants argue that since no record exists of plaintiff ever having pursued any judicial remedy in state courts, his complaint must be dismissed for failure to exhaust adequate state remedies.[5] While other actions by state prisoners have been limited to habeas corpus relief,[6] the Court of Appeals decision in Clutchette v. Procunier, 497 F.2d 809, 812–814 (9th Cir. 1974), modified on rehearing, —— F.2d 613 (October 21, 1974), clearly demonstrates that plaintiff's action here may be maintained under section 1983.[7]

---

1. The transfer was made pursuant to H.R.S. § 353–18 and 18 U.S.C. § 5003 and an agreement between the state and the federal government.

2. The original complaint also asked for money damages, but this demand was withdrawn by the first and second amended complaints.

3. A three-judge panel is not required to hear the case under 28 U.S.C. § 2281 since plaintiff does not challenge the constitutionality of H.R.S. § 353–18. Rather, he challenges the procedures followed by state officials to effect his transfer. See Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

4. Although the motion for summary judgment was filed prior to the filing of the second amended complaint (presenting the claim under the Eighth Amendment), at the hearing on the motion the parties agreed to treat this motion as including that claim.

5. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Park v. Thompson, 356 F.Supp. 783, 787 (D.Hawaii 1973).

6. See Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

7. Plaintiff was sentenced to life imprisonment without parole. He does not seek immediate or early release, but rather challenges his transfer from Hawaii. It is not anticipated that such a transfer could affect the duration of plaintiff's incarceration.

Thus, plaintiff is not required to exhaust his state remedies prior to maintaining this action.

■ The parties presented arguments respecting the validity of, and factual issues raised by, the two state claims. However, the basis for plaintiff's action in this court is his claim that his transfer violated his due process rights. If defendants are entitled to judgment as a matter of law as to this claim, this court would not allow the maintenance of a suit presenting state claims alone.[8]

As to plaintiff's due process claim, the defendants assert that the rule in the Ninth Circuit is that in an out-of-state transfer such as the one here no due process is due.[9] I do not agree. If the complaint merely alleged that plaintiff was transferred, defendants' argument would be correct.[10] As the Court of Appeals said in Fajeriak v. McGinnis, 493 F.2d 468, 470 (9th Cir. 1974):

[T]he appellant's allegation that the nonconsensual transfers were per se violative of their due process rights did not state a claim for relief. This court has previously held that such a transfer, of itself, does not present a constitutional issue. [citations omitted].

Here, however, plaintiff alleges much more than a transfer without notice or hearing. His complaint and affidavit enumerate several serious deprivations resulting from his transfer.[11] These allegations, if true, amount to a "grievous loss" to plaintiff which would entitle him to at least some procedural due process protection.

The reasoning of the court in Clutchette v. Procunier, *supra,* is appropriate here.[12] The court first pointed to the attempts that have been made at defining those sanctions which constitute "serious deprivations" or "grievous loss" so that a prisoner's liberty or property interest outweigh the state's interest in summary adjudication. Similar attempts have been made with regard to

---

8. The parties have not presented substantial arguments regarding the claim of cruel and unusual punishment. The maintenance of this claim also stands or falls with the due process claim. The complaint does not specify the "conditions and circumstances" of plaintiff's continued indefinite incarceration which allegedly amount to cruel and unusual punishment. Nor is there any evidence by affidavit or otherwise, that plaintiff is being treated differently than other prisoners in the federal prison in which he is incarcerated. Apparently, plaintiff's theory is that since he is a native of Hawaii and a state prisoner of Hawaii, his presence in Georgia for an indefinite period amounts to excessive punishment and therefore is cruel in the constitutional sense. This seems to be a challenge to the validity of his original transfer since if plaintiff's continued presence in Atlanta, Georgia, is cruel then the transfer that permitted such treatment must similarly be unconstitutional. It has generally been held that out-of-state transfers of state prisoners do not, alone, violate the Eighth Amendment. Gomes v. Travisono, 353 F.Supp. 457, 465 (D.R.I.1973), reversed in part on other grounds, 490 F.2d 1209 (1st Cir. 1974); Hoitt v. Vitek, 361 F.Supp.

1238, 1250–1251 (D.N.H.1973), affirmed on other grounds, 495 F.2d 219 (1st Cir. 1974).

9. Defendants' Memorandum in Support of Motion for Summary Judgment at 2.

10. *Contra,* Gomes v. Travisono, 490 F.2d 1209 (1st Cir. 1974). The Court of Appeals in *Gomes* first noted the inevitability of certain "inconveniences and privations" in all out-of-state transfers. It then concluded that these consequences and "the potential for continuing impact" upon the prisoner's liberty necessitated the rule that *"some* due process is mandated in all transfer cases." *Id.* at 1213–1214.

11. Plaintiff's original complaint at 3–4; Plaintiff's Affidavit at 2.

12. The holding of the court in *Clutchette* is distinguishable since the case dealt with prison disciplinary proceedings. Here, plaintiff makes no allegation that his transfer was a disciplinary action. However, the court's discussion of due process in the prison context is directly applicable here. *See also* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

out-of-state transfers.[13]  The court then stated:

The attempts thus to classify disciplinary sanctions that adversely change a prisoner's status are predicated on an erroneous notion of due process.  The "schedules" developed, of course, have great relevance to an evaluation of the "weight" of the prisoner's interests affected by the imposition of disciplinary sanctions.  And the relative weight of liberty or property interest has a significant impact on any determination of the formality and procedural requisites of the hearing required by due process.  [citations omitted].  "But, to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake."  (Board of Regents v. Roth, *supra* [408 U.S. 564] at 570–571 [92 S.Ct. 2701, 33 L.Ed.2d 548,] *citing* Morrissey v. Brewer, *supra* [408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484].)  [footnote omitted].  That is, we must see if the prisoner's interest affected is within the Fourteenth Amendment's protection of liberty and property (*see id.* at 571 [92 S.Ct. 2701]); for any prison disciplinary proceeding that impairs a prisoner's residuum of liberty or adversely affects his property interest (and which is not de minimis) condemns a prisoner "to suffer grievous loss," as that term is now understood.[14]

The court noted that every disciplinary hearing "threatens a prisoner's small store of protected liberty" and then examined the state's interests in summary proceedings.  It concluded that "except in emergency situations, the inmate's interest in preserving his slight liberty and his property and the public interest in reaching the rehabilitative ends of corrections outweigh any competing interests that could be promoted by preserving summary proceedings in the conduct of San Quentin's disciplinary hearings." [15]

In the same manner, every out-of-state transfer affects a prisoner's liberty.  Just as a prisoner who is put in isolation for disciplinary reasons is prevented from having meaningful contact with friends or family, a transferee may suffer the same harm.  However, as the court further noted, "[i]t is now axiomatic that the requisites of due process vary according to specific factual contexts." [16]  Thus, the Ninth Circuit has ruled that transfer alone does not deprive a prisoner of his liberty without due process of law even if no notice or hearing is held.  Although there appears to be disagreement among the circuits,[17] it may be that the inevitable deprivations of liberty resulting from a given transfer are not of the same nature as the punitive aspects resulting from prison disciplinary action.  But, even if this is so, as apparently the Ninth Circuit has ruled,[18] the facts as alleged here go beyond mere transfer.  A transfer of a prisoner without his consent from Hawaii to Atlanta, Georgia, is a different matter from a mere transfer across state lines.[19]  The isolation of the pris-

---

13.  *See, e. g.,* Gomes v. Travisono, 353 F. Supp. 457 (D.R.I.1973), on appeal, 490 F.2d 1209 (1st Cir. 1974) ; Bryant v. Hardy, 488 F.2d 72 (4th Cir. 1973) (per curiam); Hoitt v. Vitek, 361 F.Supp. 1238, 1251–1252 (D.N.H.1973).

14.  Clutchette v. Procunier, 497 F.2d 809, 814–815 (9th Cir. 1974), modified on rehearing, 510 F.2d 613 (October 21, 1974).

15.  *Id.* at 817.

16.  *Id.* at 816.

17.  See note 10, *supra.*

18.  *Compare,* Fajeriak v. McGinnis, 493 F.2d 468 (9th Cir. 1974), *with* Clutchette v. Procunier, 497 F.2d 809 (9th Cir. 1974).

19.  Hillen v. Director of Department of Social Services and Housing, 455 F.2d 510 (9th Cir. 1972), cert. den., 409 U.S. 989, 93 S.Ct. 331, 34 L.Ed.2d 256 (1972), is distinguishable from this case on the same grounds as stated in Park v. Thompson, 356 F.Supp. 783, 792–793 (D.Hawaii 1973).

oner—his inability to receive the help of his counsel, friends, family in Hawaii—amounts to a loss of his liberty similar to placing him in solitary confinement.[20]

I emphasize that I am ruling only on a motion for summary judgment. Plaintiff has yet to prove his allegations. But for these specific factual allegations which as yet have not been controverted by defendants, plaintiff would not state a claim for which relief could be granted under the Ninth Circuit rule.

Further, I do not now rule that plaintiff must be returned for hearing in this case. At this stage of the proceedings there appears to be no reason for imposing this burden on defendants. It is open to plaintiff to show such a need later in the proceedings.

Finally, defendants raise the question of retroactive application of the procedures outlined by Park v. Thompson, 356 F.Supp. 783 (D.Hawaii 1973).[21] I do not now hold that those procedures must apply in this case. The facts may show that all such procedures should not be followed in this case. Again, the due process which is due varies with the factual context. If plaintiff is entitled to the injunctive relief for which he prays, it is because he was denied due process of law, not because defendants failed to comply with the procedures outlined in Park.[22]

This decision is without prejudice as to the pendent state claims. Defendants may renew their motion as to those claims subsequent to their answer.

Defendants' motion for summary judgment is denied.

---

20. The disciplinary isolation imposed by the prison in Clutchette usually did not exceed 30 days (328 F.Supp. at 775). On the other hand, plaintiff was transferred from his native state of Hawaii almost 9 years ago.

See Bryant v. Hardy, 488 F.2d 72, 73 (4th Cir. 1973) (per curiam).

---

21. See also, Stipulation and Order in Broad v. Thompson, Civil No. 73–3957, November 15, 1973 (D.Hawaii).

As to retroactivity, see Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L. Ed.2d 935, 961 (1974).

22. See Clutchette v. Procunier, 328 F.Supp. 767, 785 (N.D.Cal.1971).