**Alfred J. TAI, Plaintiff,**

v.

**Myron B. THOMPSON, Director, Department of Social Services and Housing, et al., Defendants.**

**Civ. No. 74-219.**

United States District Court,
D. Hawaii.

June 24, 1975.

---

James Blanchfield, Honolulu, Hawaii, for plaintiff.

Stuart P. Shapiro, Deputy Atty. Gen., Ronald Y. Amemiya, Atty. Gen., of Hawaii, Honolulu, Hawaii, for defendants.

### MEMORANDUM AND ORDER

SAMUEL P. KING, Chief Judge.

On September 9, 1974, Plaintiff filed a Complaint [1] for Injunctive Relief and Damages, jury trial demanded, against the governor of Hawaii and the director(s) [2] of the state Department of

---

1. Plaintiff alleged jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and pursuant to the Constitution of the United States.

2. There was a change in 1974 in the office of Director of the Department of Social Services and Housing from Myron B. Thompson to Andrew I. T. Chang. The Director at the time of Plaintiff's transfer was William G. Among. This department has overall responsibility for state prisoners, which responsibility is exercised by the director through the Corrections Division which manages the Hawaii State Prison.

Social Services and Housing. His claims were that in January 1966 he had been transferred from the state prison on Oahu, where he was serving a sentence of life imprisonment without parole,[3] to the federal prison at Atlanta, Georgia, without notice or hearing, in violation of his Fourteenth Amendment constitutional rights, and, as a pendent claim, in violation of the Hawaii Administrative Procedure Act.[4] The relief sought was an order returning him to Hawaii pending the outcome of any hearing as to his "suitability for further transfer", money damages, costs and attorney's fees.

On October 29, 1974, a first amended complaint added, as another pendent claim, an alleged violation of HRS § 353-18[5] which required the approval of the governor for a transfer of a state prisoner to a federal institution. The demand for money damages was withdrawn.

Defendants moved on November 18, 1974, for summary judgment. They relied upon *Gomes v. Travisono*, 490 F.2d 1209 (1st Cir. 1973), *Hillen v. Department of Social Services and Housing*, 455 F.2d 510 (9th Cir. 1952), *Fajeriak v. McGinnis*, 493 F.2d 468 (9th Cir. 1974), and Judge Pence's decision in *Pa-*

*dayao v. Thompson*, Civil No. 74-66 (D. Hawaii, May 17, 1974).[6] Attached to the motion was a copy of a document showing that the governor on January 6, 1966, had approved something relating to the transfer in question, it not being entirely clear what he approved as the authorizations had been submitted as a request for out-of-state travel by two prison inmates and escorting correctional care personnel.[7]

On November 29, 1974, Plaintiff filed a second amended complaint adding a claim of cruel and unusual punishment in violation of his Eighth Amendment constitutional rights.

Plaintiff's memorandum in opposition to Defendants' motion for summary judgment was filed December 10, 1974, and picked up *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Cluchette v. Procunier*, 497 F.2d 809 (9th Cir. 1974). Plaintiff also read *Gomes v. Travisono* in the First Circuit differently, and cited *Park v. Thompson*, 356 F.Supp. 783 (D.Hawaii 1973), decided by this court.

At the hearing on the motion, Defendants raised the question of retroactivity of the procedures discussed in *Park v. Thompson, supra.*

---

3. Plaintiff was convicted in 1959 of the murder of two police officers. Under the penal statutes then in force in Hawaii: "Whoever is guilty of murder in the first degree shall be punished by imprisonment at hard labor for life not subject to parole." HRS § 748-4 (1957). The Hawaii Penal Code, adopted in 1972, repealed this statute, and later statutes have provided for discretionary resentencing of persons still serving sentences imposed under the earlier statutes. Plaintiff would probably receive the same sentence under the new code, as Sec. 606(a)(i) provides for life imprisonment without possibility of parole in the murder of a peace officer while in the performance of his duties.

4. HRS § 91-1 to 91-18 (1961).

5. HRS § 353-18 (1961) reads: "Transfer of prisoner to federal institution. The director of social services [and housing] shall, with the approval of the governor, effect the

transfer of a state prisoner to any federal correctional institution for imprisonment, subsistence, care, and proper employment of such a prisoner." Federal acceptance of state prisoners is authorized by 18 U.S.C. § 5003.

6. In *Padayao,* the prisoner was given a hearing prior to transfer. The hearing met the requirements of *Park v. Thompson, supra,* and followed the procedural steps set out in the Stipulation dated and filed November 15, 1973, in *Broad v. Thompson,* CIVIL NO. 73-3957 (D.Hawaii). As a result, Padayao's *Wolff* and *Cluchette* rights were not violated.

7. The "Request for Out-of-State Travel" does state in part as justification that: "Authorization has already been received from the Federal Bureau of Prisons for the transfer of Hawaii State Prison inmates Tai and . . . to Federal institutions . . . ."

On January 15, 1975, I filed my decision and order denying the motion for summary judgment.[8] I held that this court had jurisdiction of the federal claims under 42 U.S.C. § 1983 by virtue of 28 U.S.C. § 1343, and that there were disputed allegations of fact relating to his federal constitutional claims which, if true, would entitle Plaintiff to some relief.

On March 7, 1975, Defendants filed their answer to the second amended complaint. On May 7, 1975, Plaintiff moved for a preliminary injunction or alternatively for an order setting the case for trial on the merits.

On May 15, 1975, Defendants filed a supplemental memorandum in support of the earlier motion for summary judgment and in opposition to the motion for preliminary injunction. The purpose of the memorandum was to bring to the court's attention *Wheeler v. Procunier*, 508 F.2d 888 (9th Cir. 1974), and a decision in *Tai v. Chang*, S.P. No. 3880 (1st Circuit Court, State of Hawaii, May 13, 1975). *Wheeler* holds that *Cluchette* shall be applied prospectively only. In this connection, *Wolff* also held that the due process requirements in prison disciplinary proceedings enunciated therein would not be applied retroactively, following the reasoning of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971). The decision of the state circuit court held that the Hawaii Administrative Procedure Act did not apply to transfers of prisoners.

On May 30, 1975, Defendants filed an amended answer narrowing somewhat the area of disputed facts. On June 3, 1975, Defendants filed a Motion to Dismiss on the grounds that the complaint fails to state a claim upon which relief can be granted. The memorandum filed June 13, 1975, in support of this motion, reargues the issue of retroactivity, alleges "a deluge of actions by inmates adversely affecting efficient prison administration" if retroactive application of the due process requirements of *Wolff* were decreed, and brings to the court's attention the fact that the state court has also held that the requirements of HRS § 353–18 had been met as to Tai. *Tai v. Chang*, S.P. No. 3880 (1st Circuit Court, State of Hawaii, June 10, 1975).

Clearly the law in this area is in a state of flux. In *Park v. Thompson, supra*, I reviewed the state of the authorities at the time (March 23, 1973). Generally, the district courts were more receptive to prisoners' transfer complaints than the only circuit court—the Ninth—which had spoken on the issue. Then came *Gomes v. Travisono* in the First Circuit, decided December 28, 1973, amended January 7, 1974, saying, among other things:

> Whatever may be the purpose of transfers [of state prisoners to out-of-state prisons] or the inevitability of some of their consequences, we necessarily look to their effect on the inmate. Having examined both the initial or short term consequences to the transferred prisoner and the potential for continuing impact upon his liberty, we conclude that *some* due process is mandated in all [out-of-state] transfer cases. . . . the *extent* of the due process requires more delicate examination, and a balancing of the state's interests against those of the prisoner. (Emphasis in original.) 490 F.2d 1213–1214.

As pointed out by the Defendants, Judge Kilkenny of the Ninth Circuit sat by designation on this First Circuit panel and dissented, citing his own circuit's *Hillen* and *Duncan* cases. Perhaps Judge Kilkenny felt more comfortable with these latter cases because in each case certiorari to the U. S. Supreme Court had been denied. While the First Circuit's judgment in *Gomes v. Travisono* was awaiting action by the Supreme Court, that court used a complaint by inmates at a Nebraska prison

8. *Tai v. Thompson*, 387 F.Supp. 912 (D.Hawaii 1975).

as a vehicle for speaking out generally on prisoner's rights, and sent *Gomes v. Travisono* back to the First Circuit for further consideration (418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156, 1974) in light of the new opinion.

*Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), decided June 26, 1974, did not deal specifically with out-of-state transfers of state prisoners. The court said, in part:

> [The Nebraska state authorities] assert that the procedure for disciplining prison inmates for serious misconduct is a matter of policy raising no constitutional issue. If the position implies that prisoners in state institutions are wholly without the protections of the Constitution and the Due Process Clause, it is plainly untenable. Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen. . . . But though the rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country.

> .  .  .  .  .  .

> Of course, as we have indicated, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. . . . Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due defendant in such proceedings does not apply. . . . In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.

> We also reject the assertion of the State that whatever may be true of the Due Process Clause in general or of other rights protected by that Clause against state infringement, the interest of prisoners in disciplinary proceedings is not included in that "liberty" protected by the Fourteenth Amendment. . . . 418 U.S. 555–557, 94 S.Ct. 2974, 2975.

█ It follows that, if there are overtones of disciplinary action or of deprivation of liberty or equality of treatment in an out-of-state transfer of a state prisoner, *Wolff* now requires: (1) written notice of the proposed action (2) at least 24 hours before (3) a hearing thereon, accompanied by (4) a written statement of the reasons therefor and of the evidence relied upon in support thereof, (5) a restricted right to call witnesses and present documentary evidence, (6) no right of confrontation or cross-examination of adverse witnesses, (7) no right to counsel but a limited right to assistance, (8) no requirement of an impartial hearing officer or body.

One can, in an attempt to infuse some life into *Hillen* and *Duncan,* rationalize *Wolff* as applying only to disciplinary transfers, leaving as still valid the general proposition that the mere fact of an out-of-state transfer of a state prisoner to the penal institution of another state or of the federal government "presents no issue related to federally protected constitutional rights of the prisoner." [9] It will be an unimaginative and naive pleader indeed who cannot inject more than the mere fact of transfer into a complaint. See, for example, *Fajeriak v. McGinnis, supra.*[10]

---

9. *Hillen v. Director of Department of Social Services and Housing, supra,* at 511.

10. In *Fajeriak,* two of the prisoners specifically alleged that they were transferred because of their religious activities. The district court's order dismissing the complaint was reversed as to them. As the court noted in footnote 2 at 469: "The nonconsensual transfer procedure is no longer operative in Alaska, and Alaska's state prisoners are now afforded both a hearing and a right to appeal in respect to their threatened transfer."

Most of the foregoing is a rehash, albeit with the intervening support of the Supreme Court, of what I said in *Park v. Thompson* and in my earlier decision in this case. The parties agree that what happened to Plaintiff in 1966 is now prohibited by State procedures providing for a meaningful hearing.[11] Taking the allegations of his complaint as true, it was also clearly in violation of his constitutional rights as delineated in *Wolff*. If it were not for limitations on the retroactive application of *Wolff*, Plaintiff would be entitled to a trial on the merits of his complaint.

*Wolff* holds that the newly mandated due process requirements in prison disciplinary proceedings were not to apply retroactively. The court said:

> . . . Despite the fact that [these] procedures are related to the integrity of the factfinding process, in the context of disciplinary proceedings, where less is generally at stake for an individual than at a criminal trial, great weight should be given to the significant impact a retroactive ruling would have on the administration of all prisons in the country, and the reliance prison officials placed, in good faith, on prior law not requiring such procedures. . . . On the whole, we do not think that error was so pervasive in the system under the old procedures as to warrant this cost or result. 418 U.S. 573–574, 94 S.Ct. 2983.

*Wheeler v. Procunier*, 508 F.2d 888 (9th Cir. 1974), holds that the decision in *Cluchette v. Procunier*, 497 F.2d 809 (9th Cir. 1974), as modified on rehearing October 21, 1974, "shall only be applied prospectively." *Cluchette* is the Ninth Circuit's latest word on *Wolff*. Actually, Judge Hufstedler for a majority, Judge Kilkenny dissenting, reached *Wolff* results on April 25, 1974, in *Cluchette v. Procunier*, 497 F.2d 809

(1974). Then came *Wolff*, decided June 26, 1974. Accordingly, rehearing of *Cluchette* was granted on July 29, 1974, and a new decision filed on October 21, 1974, *Cluchette v. Procunier*, 510 F.2d 613 (9th Cir. 1974), "to assess the impact" of *Wolff* on the earlier *Cluchette*. The later decision, revised the earlier decision with respect to prisoners' privileges, confrontation and cross-examination, and counsel and counsel-substitutes, to meet the standards discussed in *Wolff*. It also reaffirmed that "some process is due to prisoners whose privileges are to be removed." Among these privileges, the court mentions "access to visitors".

Thus, taking the allegations of the complaint as true, and considering the out-of-state transfer of Plaintiff as having disciplinary overtones or as involving deprivation of privileges, claims for denial of due process in connection with the accomplishment of the transfer will not be considered because the transfer took place prior to *Park v. Thompson*, decided March 23, 1973.

We have been discussing Plaintiff's situation as though he were complaining of matters entirely in the past. Actually, he is still a State of Hawaii prisoner in the federal prison at Atlanta, Georgia.

The question of retroactivity in *Wolff* arose in the context of the holding by the First Circuit that "prison records containing determinations of misconduct, not in accord with required procedures, be expunged." 418 U.S. 573, 94 S.Ct. 2983. The Supreme Court seemed to think retroactive application of this requirement would be an unreasonable burden on state officials. In *Wheeler*, the question of retroactivity arose in the context of a transfer from the general prison population to punitive segregation confinement. It does not appear how long the punitive segregation was

---

11. Prisoners' class actions and voluntary action by correctional authorities have resulted in detailed guidelines, procedures, and rules covering all aspects of prison life.

to last or whether it was in fact already over. Here we have an indefinitely continuing situation with no provision for review or retransfer.

■ Under these circumstances, I am of the opinion that due process requires some provision for reconsideration or periodic review of the kind of continuing status into which Plaintiff was placed by procedures that violated his constitutional rights.

In arguing for non-retroactivity of *Wolff* and *Cluchette,* the Defendants presented statistics to support a claim that there would be "a deluge of actions by inmates adversely affecting efficient prison administration." Upon closer examination, I elicited the information from counsel for Defendants that there are 8 prisoners in Plaintiff's situation.

Anticipating the argument that neither *Wolff* nor *Cluchette* mention posthearing review or reconsideration as an element of due process, I quote Judge Hufstedler in *Cluchette II:*

> We are mindful of the [Supreme] Court's encouragement of prison disciplinary procedures and of experiments within the disciplinary context directed toward rehabilitative goals. We are particularly aware of the Court's admonition that the minimum constitutional protections mandated by *Wolff* are not "graven in stone" . . . and that the underlying constitutional concepts will be subject to reevaluation as changes in prison discipline evolve. 510 F.2d 615.

Plaintiff presents four claims, of which two, the pendent claims based upon the Hawaii Administrative Procedure Act and HRS § 353–18, have been decided against him in the state circuit court. The fourth claim under the Eighth Amendment is without merit. See *Park v. Thompson, supra,* at 790.[12] These three claims will be dismissed.

The motion to dismiss Plaintiff's due process claims presents problems. Taking the complaint as true, Plaintiff is not entitled to a reversal of his earlier transfer and reinstatement as a state prisoner in a local state prison. He is at most entitled to a review of his present situation. Such a review should be by some competent person or committee within or designated by some person in authority within the state correctional system and should afford Plaintiff a reasonable opportunity to present factual and argumentative material in support of his desire to return to Hawaii (if that is his desire) and in response to negative factual or argumentative material. Plaintiff's presence is not required. Whatever decision is reached should be in writing and give the reasons and the factual basis therefor. But Plaintiff has not requested such a review.

Based on the foregoing, Plaintiff may wish to consider an amended complaint. A third amended complaint setting forth all of Plaintiff's current allegations, instead of incorporating the allegations of a previous complaint by reference, would be helpful. John A. Burns does not seem to be a proper party defendant, nor does his successor in office.[13]

### ORDER

The Motion for Preliminary Injunction is denied.

The Defendants' Motion to Dismiss is granted with leave to Plaintiff to amend in 30 days.

---

12. I followed Judge Pettine's reasoning in *Gomes v. Travisono,* 353 F.Supp. 457, 465 (D.R.I.1973).

13. John A. Burns retired from public life as Governor of Hawaii as of December 2, 1974, and died April 5, 1975. The pendent claim under HRS § 353–18 is now res judicata as a result of Tai's state action.