**John Wesley CLUTCHETTE et al.,**
**Appellees,**

v.

**Raymond K. PROCUNIER et al.,**
**Appellants.**

**No. 71-2357.**

United States Court of Appeals,
Ninth Circuit.

Oct. 21, 1974.

As Modified on Denial of Rehearing and Rehearing En Banc Feb. 27, 1975.

Certiorari Granted June 9, 1975.

See 95 S.Ct. 2414.

William D. Stein, Deputy Atty. Gen. (argued), San Francisco, Cal., for appellants.

William Bennett Turner (argued), San Francisco, Cal., for appellees.

Before TUTTLE,* HUFSTEDLER, and KILKENNY, Circuit Judges.

## OPINION ON REHEARING

HUFSTEDLER, Circuit Judge:

We granted rehearing to assess the impact of Wolff v. McDonnell (1974) 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 upon our prior opinion stating the constitutional protections due inmates of San Quentin prison in the context of prison disciplinary proceedings (497 F. 2d 809). We modify our opinion in respect of loss of privileges, confrontation and cross-examination of witnesses, and the right to counsel or a counsel-substitute in disciplinary proceedings (other than those involving infractions also punishable by state authorities as crimes) to conform it to the views expressed in *Wolff*. We reaffirm our prior opinion in all other respects because the remaining portions are in harmony with *Wolff*, or are related to issues untouched by *Wolff*.[1]

---

* Honorable Elbert P. Tuttle, Senior Judge, Fifth Circuit, sitting by assignment.

1. Footnote 11 of the original opinion is modified by striking from the first sentence thereof the word "voluntarily" and substituting therefor "ordered to be."

We are mindful of the Court's encouragement of the continued development of prison disciplinary procedures and of experiments within the disciplinary context directed toward rehabilitative goals. We are particularly aware of the Court's admonition that the minimum constitutional protections mandated by *Wolff* are not "graven in stone" (418 U.S. at 572, 94 S.Ct. at 2982) and that the underlying constitutional concepts will be subject to reevaluation as changes in prison discipline evolve.

## I.

### "Privileges"

Our prior opinion extended the due process protections therein described "[e]ven [to] a temporary suspension of 'privileges,' by restricting the prisoner's activities to a greater extent than the general prison population . . . ." (497 F.2d at 815.) Because the Court in *Wolff* suggested that the due process procedures it commanded might not be required in proceedings involving "lesser penalties such as the loss of privileges" (418 U.S. at 571, 94 S.Ct. at 2982, n. 19) we reconsider the point.

██ Any deprivation of the small store of "privileges" accorded a confined or relatively confined group causes a far greater sense of loss than a similar deprivation in a free setting, as anyone can attest who has been a student in a strict boarding school, a sailor aboard ship, a combat soldier, or a prisoner in time of war or peace. Within prison walls, the denomination "privileges" can encompass a host of matters, ranging from simple amenities through such cherished concerns as access to visitors, schooling, recreation, and institutional employment. Grievousness of the loss depends upon the nature and extent of the privileges withdrawn for disciplinary purposes and upon the circumstances and makeup of the prisoner who suffers the loss. Deprivation of the more highly valued privileges can have as debilitating an effect on the amenability of a prisoner to rehabilitation as the loss of some good-time credit or a period of isolation from the general prison population. We therefore believe that some process is due to prisoners whose privileges are to be removed. Because the severity of the loss of privileges depends on multiple variables, we do not purport to draw a detailed constitutional blueprint governing the removal of privileges for disciplinary purposes. Process due can and should be flexible to meet the exigencies of the situation. We require only that any plan establishing disciplinary procedures attending withdrawal of privileges embrace at least these due process minima: A prisoner subject to removal of one or more privileges (1) must be given notice of intent to remove one or more stated privileges, (2) together with a statement of grounds for removal, (3) at a reasonable time before discipline is imposed, and (4) must be given an opportunity to respond before such discipline is imposed. We leave to the prison administration the fashioning of a plan to implement these guarantees, with appropriate regard for the seriousness of the infraction, the severity of the deprivation, and the circumstances of the affected prisoner.

## II.

### Confrontation and Cross-Examination

*Wolff* held that confrontation and cross-examination are not "at the present time" constitutionally compelled. (418 U.S. at 567, 94 S.Ct. 2980.) "[I]n the current environment, where prison disruption remains a serious concern to administrators, we cannot ignore the desire and effort of many States, including Nebraska and the Federal Government, to avoid situations that may trigger deep emotions and that may scuttle the disciplinary process as a rehabilitation vehicle." (*Id.*) The Court thereupon committed the allowance or denial of confrontation and cross-examination "to the sound discretion of the officials of state prisons." (*Id.*)

██ The Court did not prescribe any method by which the soundness of the

discretion thus accorded could be subjected to scrutiny. We do so now. Whenever a prisoner requests and is denied the privilege of confrontation and cross-examination in a disciplinary proceeding in which a serious sanction can be imposed (excluding a proceeding for an infraction that is also a crime), the prison authorities must enter in the record of the proceeding and make available to the prisoner an explanation for the denial. Failure to make that explanation or an explanation setting forth reasons not related to the prevention of those ills about which the Supreme Court was concerned—reprisals, unmanageability, disruption, safety of prison personnel—will be deemed prima facie evidence of abuse of discretion that can be called to the attention of parole authorities and, under appropriate circumstances, of the courts as well.

### III.

### Counsel and Counsel-Substitutes

In *Wolff*, the Court declined to hold "that inmates have a right to either retained or appointed counsel in disciplinary proceedings." (418 U.S. at 570, 94 S.Ct. at 2981.) "Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." (*Id.*)

A provision for counsel-substitute does not depend upon the seriousness of the disciplinary sanction threatened, as we had contemplated in our prior opinion, but, under *Wolff*, turns on the ability of the prisoner to handle his own case. The consideration is crucial because any guaranty of process due is empty if the particular inmate is incompetent meaningfully to avail himself of it. Accordingly, we hold that in submitting a plan to the district court, the prison authorities must make provision for a counsel-substitute whenever a prisoner subjected to disciplinary proceedings is unable competently to handle his case without help.

*Wolff* did not reach the question of the right to counsel when a prisoner "is required to appear before a prison disciplinary committee for violation of a prison rule which may also be punishable by state authorities." (497 F.2d at 823.) Nothing in *Wolff* suggests to us that our reasoning or our conclusion on this issue requires reconsideration, and we decline the appellants' request that we do so.

Finally, respondents complain that the prison authorities seek to avoid the due process protections that the Supreme Court and we have required by relabeling some disciplinary proceedings as "administrative classifications." If the complaint has foundation, the ruse will be defeated. But the record before us does not reveal any facts bearing on the issue, and the district court has not had an opportunity to consider it. If any facts do exist tending to support the claim, they can be developed on remand.

We adhere to our prior opinion as herein modified. The cause is remanded for further proceedings consistent with the views herein expressed.

KILKENNY, Circuit Judge (dissenting):

I would vacate and remand to the district court for a full fledged hearing in which the court would determine and judicially declare whether appellants' disciplinary rules and regulations, *currently in effect*, meet the four constitutional requirements enunciated in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). If the court finds that the procedural due process safeguards required by *Wolff* are recognized in the current rules and regulations, the case should be dismissed. Otherwise, the court should direct appellants to amend the rules and regulations to comply with such safeguards.