John Wesley CLUTCHETTE et al., Plaintiffs,

v.

J. J. ENOMOTO et al., Defendants.

No. C–70–2497 AJZ.

United States District Court,
N. D. California.

March 2, 1979.

Steinhart, Goldberg, Feigenbaum & Ladar, Robert T. Fries, San Francisco, Cal., for plaintiffs.

George Deukmejian, Atty. Gen. of the State of California, William D. Stein, Deputy Atty. Gen., San Francisco, Cal., for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ZIRPOLI, District Judge.

This case, originally filed in 1970, has resulted in several ground-breaking opinions, by this court, the Court of Appeals for the Ninth Circuit, and the Supreme Court. (See: *Clutchette v. Procunier*, 328 F.Supp. 767 (N.D.Cal.1971), *aff'd*, 497 F.2d 809 (9th Cir. 1974), *modified*, 510 F.2d 613 (9th Cir. 1975), *rev'd sub nom.*, *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).) The plaintiff class consists of prisoners at California's San Quentin prison who challenge the constitutionality of prison disciplinary proceedings. On June 21, 1971, after an evidentiary hearing, this court ordered the state to permit prisoners accused of infractions that may be punishable by a prosecution in state courts to retain counsel, and to provide counsel where the inmate is unable to procure representation on his own behalf. Where a less serious violation of prison disciplinary rules is involved, the state was ordered to permit or provide "counsel-substitute," that is, someone to assist the inmate in dealing with the accusations against him, though this person need not be an attorney. 328 F.Supp. at 783. The court further held that various other due process rights attached to institutional disciplinary proceedings, including the right to remain silent without the drawing of adverse inferences, the right to call witnesses in one's own behalf, and the right to cross-examine witnesses presented by the state.

The Supreme Court subsequently held that the question of whether to permit counsel at a prison disciplinary proceeding should be left to the state and to the prison's administrators. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Court recognized, however, that in certain cases circumstances might mandate that assistance in the form of counsel-substitute:

> Where an illiterate inmate is involved, however, or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. We need not pursue the matter further here, however, for there is no claim that respondent, McDonnell, is within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing.

*Id.* at 570, 94 S.Ct. at 2982. The Ninth Circuit, which originally had affirmed this court's order in virtually all respects (*Clutchette v. Procunier*, 497 F.2d 809 (9th Cir. 1974)), modified its opinion in light of *Wolff's* conclusion that the significant consideration was the inmate's ability "compe-

tently to handle his case without help." *Clutchette v. Procunier,* 510 F.2d 613, 616 (9th Cir. 1975). The Supreme Court reversed both opinions of the Ninth Circuit, adopting the conclusion in *Wolff* that the conduct of prison procedures is better left to prison officials. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). On the issue of counsel, the Court reiterated its conclusion in *Wolff* that the state need not provide nor permit counsel in disciplinary proceedings. *Id.* at 315, 96 S.Ct. 1551. The Court did not address the issue of counsel-substitute. The Ninth Circuit vacated its prior opinions to the extent that they were inconsistent with *Baxter,* and remanded to this court for further proceedings. *Clutchette v. Enomoto,* 536 F.2d 305 (9th Cir. 1976).

The plaintiffs have negotiated with the state in the attempt to formulate procedures that are acceptable to prison officials while at the same time protective of the rights of class members to the extent that these may have a constitutional foundation in light of the Supreme Court's opinion in this matter. Apparently, the parties have been able to settle their differences in all areas other than that of counsel-substitutes. The plaintiffs have made this motion for summary judgment on that issue, seeking to have invalidated the present prison regulations providing for staff assistance to inmates in some disciplinary situations, and to have imposed more liberal provisions for counsel-substitute. The court grants in part and denies in part the plaintiff's motion.

### 1. The Present System

The current Rules and Regulations of the Director of the Department of Corrections are contained in 15 California Administrative Code sections 3310–3325. The plaintiffs accept the rules and regulations as set forth therein with one exception: they claim that the rules do not provide for adequate counsel-substitute to assist prisoners in investigating charges of rule viola-

tions and presenting their defenses at disciplinary hearings. The rules provide, in this respect, that an inmate charged with a "serious" rule violation[1] shall have "the right to have an investigative employee assigned to investigate the charges." The inmate may waive this right, but the hearing officer may nonetheless order that an investigator be assigned. 15 Cal.Admin.Code § 3315(d). The investigator is required to prepare a report for submission to the hearing officer, and the inmate is entitled to receive a copy of this report at least 24 hours prior to the hearing. 15 Cal.Admin. Code § 3319(a). An inmate may not select the investigator that will be assigned to his case, but may object to the first investigator assigned, in which case a new investigator will be designated. 15 Cal.Admin.Code § 3319(b).

In addition to an investigator, an inmate is in some circumstances entitled to the aid of a staff assistant. Section 3318(a) of 15 California Administrative Code provides in part:

> When it is evident that an inmate will be unable for any reason to comprehend the disciplinary charges, the possible consequences of such charges, the disciplinary hearing process or the purpose of classification committee review of housing status, the appeal procedures, or his or her rights, or to collect and present evidence in support of his or her own defense or position, a staff member will be assigned by the chief disciplinary officer to assist the inmate. . . .

As with investigators, an inmate may peremptorily challenge the first staff assistant assigned to his case. 15 Cal.Admin.Code § 3318(b). The regulations make clear, however, that the staff assistant is not an advocate for the inmate:

> (c) Before assignment of a staff assistant, the inmate will be informed that the staff member will assist the inmate only to the extent possible to insure that the inmate's position is understood and that the inmate understands his or her rights,

---

1. A "serious" rule violation is one defined by 15 Cal.Admin.Code § 3315(a). The parties are

not in dispute as to the breadth of this category.

the procedures involved, and the decisions reached. Staff will not give legal counsel nor advise the inmate of the position that he or she should take in any disciplinary, classification or criminal proceedings. The inmate will be warned that acceptance of staff assistance offers no immunity nor confidentiality of or for any incrimination evidence or information disclosed to or discovered by the staff assistant, either in a disciplinary hearing or in criminal proceedings before or after a disciplinary hearing.

(d) Any staff member assigned to assist an inmate who becomes aware of information or evidence which presents a threat to institution security or to the safety of any person or the general public must immediately report that information to the official in charge of the institution.

15 Cal.Admin.Code § 3318(c)–(d).

It is this system that the plaintiffs seek to change.

2. The Plaintiffs' Complaints

The plaintiffs argue that an inmate charged with violating a disciplinary rule is entitled to counsel-substitute whenever the inmate is unable competently to handle his case without help. As authority for this contention, the plaintiffs cite the prior opinion of this court in this case, and note that neither the subsequent history of the case nor intervening opinions of the Supreme Court or the Ninth Circuit Court of Appeals have altered this right. They note that when this case was remanded by the Ninth Circuit after its modification in light of *Wolff, supra,* that court held that the state was required to provide for counsel-substitute when the needs of the inmate so dictated. *Clutchette v. Procunier,* 510 F.2d 613, 616 (9th Cir. 1975). The Supreme Court, in reversing the Ninth Circuit, did not discuss this issue, and therefore, it is argued, the requirement is left intact.

This requirement established, the plaintiffs contend that the present system is defective in several respects. First, they contend that the staff assistant assigned to

an inmate's case should be an advocate and counselor for the inmate, while in fact the assistance provided merely takes the form. of interpretation. Secondly, it is argued that the staff assistant is an inadequate counsel-substitute because this person is not free to keep communications with the prisoner confidential. To the contrary, the staff assistant is under an affirmative obligation to divulge communications under certain circumstances. (See 15 Cal.Admin. Code § 3318(d), quoted supra.) Thirdly, plaintiffs allege that the system is inadequate because the pool of counsel-substitutes is limited to staff personnel, thereby excluding other capable—and, it is contended, more desirable—persons from acting as counsel-substitutes. Finally, the plaintiffs complain that even such help as is currently available in the form of staff assistants should be offered as a matter of course, and not simply because the prison officials determine that it is "evident" that the inmate will not be able to comprehend the proceedings. In support of this contention, plaintiffs note that a majority of San Quentin's population might qualify as "illiterate" for the purposes of the test set forth in *Wolff.*

The defendants deny that an inmate is entitled to the assistance of counsel-substitute, and in fact argue that this term is a "rubric" by which the plaintiffs seek to obtain more than that to which they are entitled. They specifically note that *Wolff* calls only for "substitute aid," and does not specifically require that this aid have the other attributes of an attorney. They further contend that the dilemma to which a prisoner is allegedly put in choosing between, on the one hand, divulging his confidences to the staff assistant on the risk that they will be disclosed to prison authorities or, on the other, of proceeding with inadequate assistance, is simply one of the difficult choices to which defendants are commonly subjected by the legal system. (See *McGautha v. California,* 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971).) Defendants conclude their brief with an extensive presentation wherein it is argued that federal courts should not leap to the fore-

front in determining how a state prison should conduct its affairs, especially where a state court could more fully remedy whatever defects exist, as the supervisory powers of a state court over a state institution exceed the powers of a federal court, which may only mandate the constitutional rudiments. The state therefore asks the court to abstain, and asks the plaintiffs to proceed, if at all, before the California courts.

### 3. Discussion

The court grants the motion insofar as it would require the state to make the staff assistant retain the confidences of the inmate; to be an advocate for an inmate not competent to act as such on his own behalf; and to notify all inmates charged with disciplinary infractions that a staff assistant is available to those not able competently to conduct their own defense in the proceeding. The motion is denied to the extent that it would require the prison to permit persons other than staff members or other inmates to act as counsel substitutes, and to the extent that it would require the staff assistant to act as an advocate in all cases.

The case is essentially one of first impression in that it calls for a determination of the breadth of assistance to be afforded to an inmate in a prison disciplinary proceeding where the inmate's competency in conducting his own defense is in doubt. Specifically, the court is asked to elaborate on the requirement of *Wolff v. McDonnell,* 418 U.S. at 570, 94 S.Ct. at 2982, that an inmate who is illiterate or who faces issues so complex that it is "unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case" be provided adequate assistance in lieu of counsel.

■ The plaintiffs claim that the present assistance is inadequate, and the court agrees. Starting with the assumption that an inmate has already been determined to be unable competently to pursue the matter without assistance, it can hardly be considered "adequate" that he is provided with a staff member whose duties as well as his loyalties require that he report important items of information to the inmate's adversary. An inmate cannot reasonably be expected to reveal such information to the staff assistant on pain of further punishment or other measures; yet the prison itself has already determined that the inmate is not competent to proceed on his own. Without deciding whether the burden-on-conflicting-rights argument of *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), and *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), is a dead letter, as defendants suggest, it appears that as a direct matter of construing the opinion of the Supreme Court in *Wolff,* some assistance is required that would put the incompetent inmate on a par with the competent. It is this form of "substitute aid" that the Court ordered for those not otherwise competent to conduct themselves, and it is this sort of aid that the Ninth Circuit, in modifying its opinion in this case in light of *Wolff,* directed that the state should provide. *Clutchette v. Enomoto,* 510 F.2d at 616. Yet a staff member who must report to the warden any information that the inmate gives him that may be construed by the assistant as posing a threat to the institution cannot fairly be said to provide this sort of aid. It is not simply a matter of the inmate being put to a choice between undesirable alternatives; it is a matter of the assistance being provided not measuring up to the standard that the Supreme Court dictated in *Wolff* and that the Ninth Circuit required in remanding this case. Accordingly, 15 Cal.Admin.Code section 3318(d), which requires the staff assistant to divulge confidences, violates the Supreme Court's mandate and violates the rights of inmates thereunder. This aspect of the summary judgment motion is therefore granted.

■ With respect to plaintiffs' complaint that the staff assistant should be an advocate on behalf of the inmate, the *Wolff* opinion provides a clear guide. The staff assistant need not be an advocate in all cases, as plaintiffs suggest, nor in no cases, as the present system requires. Rather, the

person provided by the prison should be an advocate where the inmate is unable to advocate his position on his own behalf, which is not the case in every instance in which a staff assistant is provided. That is, there will be many cases in which the inmate facing a disciplinary proceeding will be able competently to advocate his own position once he has been provided with the appropriate assistance and explanations of the nature of the proceeding pending against him. For such an inmate, *Wolff* does not require that the state provide an advocate. Yet there will also be cases where information and impartial assistance will not be enough. For example, in the case of a prisoner not fluent in the English language, or otherwise unable adequately to argue on his own behalf, the assistance of an advocate would clearly be desirable, and, indeed, mandated by the tenor of the Supreme Court's opinion in *Wolff*.

■ Plaintiffs also argue that each inmate facing a disciplinary proceeding should be made aware of the availability of staff assistance, and the state should be required to produce a written waiver of such assistance where such assistance has not been provided. The present system exhibits the other extreme: inmates are not notified at all of the staff assistance that is available unless and until the authorities determine that it "is evident" that the inmate cannot competently conduct the proceedings on his own. Certainly a compromise is in order. The state's procedure of relying on its own discretion to decide whether to make assistance available is unacceptable, as the inmate should have at least some voice in the determination that he is unable to comprehend his predicament and competently to deal with it, even if the ultimate determination is left, as it inevitably must be, with the prison administration. The prison should be required, therefore, at least to make the inmate aware that staff assistance is available in the event that the inmate believes himself to be, or is ultimately found to be, incompetent to proceed on his own. In addition, some procedure should be established for determining whether the inmate qualifies for such assistance. The inmate could thereby be given an opportunity to convince the officials that he qualifies for assistance rather than be forced to rely on them to discover his incapacity on their own inquiry.

Plaintiffs would have the court go farther than this and engage in the presumption that every inmate at San Quentin would qualify as incompetent or illiterate within the meaning of *Wolff*. In support of this contention, it is noted that the median educational level of the inmates at San Quentin is the seventh grade, and 75 percent of the prisoners have not gone beyond the ninth grade. Yet in the latter half of 1977, only 16 percent of the inmates against whom disciplinary proceedings were conducted received help from staff assistants. Plaintiffs would therefore require the state to make a special showing that a particular prisoner was *not* entitled to aid, rather than the current practice of requiring a special showing that aid should be provided.

The court need not go this far, however. If the court can be assured that prisoners have been made aware that assistance will be provided should they qualify, it is not necessary to impose the additional burden of mandatory assistance. The prison may choose to require inmates to sign a form indicating that they have been made aware of the possibility of aid, simply as a form of protection against further litigation, but this should be left to the prison absent evidence of abuse.

■ Plaintiffs finally argue that the current regulations are defective in that they limit the pool of available counsel-substitutes to staff members, who may lack competence in legal areas, and who must have certain loyalties to their employer, the institution. Plaintiffs suggest that, for example, law students should be included among those available to assist inmates. *Wolff* and *Baxter* require the court to reject this claim. The central theme of those cases as they relate to the exclusion of counsel from prison disciplinary proceedings is that the prison is a unique, complicated, and potentially volatile institution, and that prison

authorities have a duty to other prisoners and to the community at large to maintain order and security that must be balanced against the rights of the inmates to due process protections. With this premise in mind, it would be remiss for this court to require San Quentin to permit inmates to select members of the outside community to assist them, with the attendant traffic that a maximum security facility like San Quentin may be unable to accommodate without compromising security and decorum. The court therefore rejects plaintiffs' request. The striking of the regulation that requires a staff assistant to disclose confidences, plus the requirement that the assistant be an advocate in appropriate situations will adequately provide the aid to inmates required by due process and by *Wolff* without overstepping the boundaries the Supreme Court has established. Should the prison choose to permit law students or other inmates to provide assistance, of course it may do so.

The defendants have argued that the court should keep out of the business of running state penal institutions. The court rejects this argument today, as it has on prior occasions in this case. When a question of due process and the interpretation of Supreme Court mandate is placed before the court in a properly constituted controversy, as this one, the court's duty is to see that the federal interests and requirements are protected. If, as defendants suggest, the plaintiffs could obtain a more complete remedy in state court, then perhaps plaintiffs would be well advised to seek the balance of their remedy in that forum. But where there are issues properly presented to this court, and properly within its jurisdiction, the court should render its decision to the best of its ability. The inapplicability of the various abstention doctrines was fully discussed in this court's original opinion, 328 F.Supp. at 771–73. The Ninth Circuit reached the same conclusion. 497 F.2d at 814 n.6. The Supreme Court did not address the issue and must be said to be in agreement, since that Court also reached the merits of the case.

ORDERED ACCORDINGLY.