OPINION OF THE COURT
John W. Grow, J.
Petitioner brings the present habeas corpus proceeding to obtain his release from penal confinement.
*380 While serving a sentence for manslaughter at Green Haven Correctional Facility (Green Haven),[1] petitioner admittedly killed a fellow inmate. The incident occurred on September 25, 1986, and criminal charges were subsequently brought against petitioner in Dutchess County Court. Petitioner raised the insanity defense and the Honorable John R. King, County Court Judge, in a decision dated May 7, 1987, found petitioner not guilty by reason of insanity. Disciplinary proceedings were brought against petitioner at Green Haven and a Tier III hearing was held on September 30 and October 6, 1986. On October 6, 1986, the Hearing Officer found petitioner guilty of assault and imposed a penalty of seven years’ loss of good time, seven years in segregated housing unit, and seven years’ loss of certain privileges. There is nothing in the record to indicate that petitioner’s mental state at the time of the incident was in any way considered by the Hearing Officer. Upon administrative appeal, the Hearing Officer’s decision was affirmed by the respondent Coughlin’s designee on September 16, 1987, though three years of petitioner’s good time were restored. Petitioner has now been civilly committed by Judge King pursuant to CPL 330.20 following a commitment hearing.
In the present proceeding, petitioner contends that the disciplinary sanctions imposed must be annulled since he was not able to appreciate the nature and consequences of his actions at the time of the incident and was not given the opportunity and means of presenting an insanity defense at the Tier III hearing. Petitioner claims that his constitutional right to due process was violated in that he was deprived of liberty interests without being given the opportunity to present an insanity defense.[2] Petitioner further maintains that the County Court’s decision of not guilty by reason of insanity should be held to be conclusively binding as an absolute defense in the disciplinary proceeding.
New York Penal Law § 40.15 provides as follows:
*381 "In any prosecution for an offense, it is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either:
"1. The nature and consequences of such conduct; or
"2. That such conduct was wrong.”
Thus, by finding petitioner not guilty by reason of insanity, the County Court Judge necessarily found that petitioner had sustained his burden of proving that he did not know or appreciate either the nature and consequences of his act or that such act was wrong. The question, then, is under what circumstances petitioner can be subject to punishment in a prison disciplinary context for the very same conduct.
While the court is cognizant of the fact that prisoners are entitled to certain due process protections in the prison disciplinary process (see, Wolff v McDonnell, 418 US 539; Sher v Coughlin, 739 F2d 77, 80-81), petitioner has cited no Federal or New York case holding that under the United States or New York Constitutions due process requires the availability of an insanity defense in the prison disciplinary context. The court is aware of no explicit authority for the proposition that prisoners have either a Federal or New York State due process right to an insanity defense in the prison disciplinary setting.
In support of his claim that even if the court finds that there is no Federal due process right to an insanity defense, such a due process right should be found to exist under New York State law, petitioner cites People ex rel. Newcomb v Metz (64 AD2d 219, 222 [3d Dept 1978]), where the court held that "the interests of fundamental fairness mandate a consideration of a person’s mental competency during the parole revocation process.” The Newcomb court found that mental competency was a factor to be considered in the parole revocation process. The Fourth Department followed Newcomb in People ex rel. Porter v Smith (71 AD2d 1056). In considering the precedential effect to be afforded Newcomb and Porter, the court is mindful of the fact that prisoners in disciplinary proceedings are not entitled to the full range of due process safeguards mandated for parolees facing revocation (Wolff v McDonnell, supra, at 560-572).
*382 Viewing the instant case as one involving the question of whether the disciplinary determination is supported by substantial evidence (see, e.g., Matter of Montgomery v Kelly, 138 AD2d 938 [4th Dept 1988]), the court finds that the mental competence and mental illness of a prisoner must be considered during the prison disciplinary process where a Penal Law § 40.15 adjudication has been made or a well-documented history of serious psychiatric problems calls the prisoner’s mental health into question. In view of the court’s determination, the court does not reach the constitutional due process issue. (Matter of Coleman v Coombe, 65 NY2d 777, 780; People v Felix, 58 NY2d 156, 161.) Rather, the court holds that where there has been a section 40.15 adjudication or a documented history of serious psychiatric problems the prisoner’s mental condition is a factor which must be considered in deciding whether the disciplinary determination is supported by substantial evidence.
The court finds that where, as here, there has been a finding of not guilty by reason of insanity in a criminal action based upon the very same activity which formed the basis for a prison disciplinary hearing, the prisoner must be given the opportunity to submit proof concerning his mental state at the prison disciplinary hearing. The court finds that where the prisoner has been adjudicated not guilty by reason of insanity pursuant to New York Penal Law § 40.15 or has a documented history of serious psychiatric problems, an inmate assistant or other counsel substitute[3] should be appointed to advocate on behalf of the prisoner and aid the prisoner in obtaining a psychiatric evaluation for use at the disciplinary hearing; the Hearing Officer should make specific inquiry concerning the prisoner’s mental state; and the Hearing Officer should consider the prisoner’s mental state in reaching his decision. This court’s holding is limited to situations in which a criminal court has adjudicated a prisoner not guilty by reason of insanity pursuant to New York Penal Law § 40.15 or the *383 prisoner has a documented history of serious psychiatric problems.
Although a prisoner may certainly face deprivation of a liberty interest in a disciplinary hearing, such a hearing is not the equivalent of a criminal trial (Wolff v McDonnell, supra), and determination of the manner in which the mental health of an accused prisoner is to be dealt with in the prison disciplinary context must be made with a view toward the peculiar objectives and constraints of the prison disciplinary system. However, under circumstances such as those presented in the instant case, the prisoner’s mental state is certainly a factor to be considered by the Hearing Officer in determining whether the prisoner is guilty of an alleged rule violation.[4] Upon judicial review, consideration of the Hearing Officer’s inquiry into the mental state of the prisoner, if warranted, would be part of the determination of whether the Hearing Officer’s finding was supported by substantial evidence.[5]
In the present case, although petitioner had not yet been adjudicated not guilty of the criminal charge by reason of insanity at the time of the initial disciplinary hearing in the fall of 1986, petitioner had a documented history of aberrant behavior (e.g., eating plastic utensils) prior to the prison killing which should have put the Hearing Officer on notice of the need for further inquiry concerning petitioner’s mental state. Prison records contain references to petitioner’s "constant display of abnormal behavior” as far back as early 1983, and the category of "psychiatric” was listed under "other considerations” in his institution history. In view of petitioner’s history of abnormal behavior, the Hearing Officer certainly should have had petitioner examined by a psychiatrist prior to the disciplinary hearing to determine (1) if petitioner was competent to conduct his defense at the hearing; and (2) if petitioner was suffering from a mental disease or defect at the time of the incident which would affect the determination of *384 culpability. Although respondent Coughlin’s designee was made aware of Judge King’s decision on the administrative appeal, he neither reversed nor remanded based upon the ruling, and he took no steps to ascertain petitioner’s mental state.[6]
The County Court’s ruling sustaining petitioner’s insanity defense certainly should have been considered and given great weight. In addition, the Penal Law § 40.15 adjudication should have triggered further inquiry concerning petitioner’s mental state.
Viewing this proceeding as a CPLR article 78 rather than a habeas corpus,[7] the court finds that the Hearing Officer’s failure to consider petitioner’s mental state leads to the conclusion that the determination is not supported by substantial evidence. The court hereby reverses and annuls the disciplinary determination and remands this matter for further disciplinary proceedings. (Matter of Coleman v Coombe, supra; Matter of Sabo v Racette, 124 AD2d 920, 921; see also, People ex rel. Porter v Smith, supra, at 1056 [remittal "for a hearing at which psychiatric proof should be presented”].) On remand, petitioner is to be provided with the services of an inmate assistant or other counsel substitute and is to be provided with a psychiatric evaluation by respondents. The Hearing Officer is directed to make specific inquiry concerning (1) *385 petitioner’s competence to conduct his defense at the hearing; and (2) petitioner’s mental state at the time he engaged in the proscribed conduct.
The court hereby converts petitioner’s habeas corpus proceeding to an article 78 proceeding; reverses and annuls the determination of the Hearing Officer and the penalty imposed; and remands the matter for further disciplinary proceedings consistent with this opinion, to be held at such time as petitioner is sufficiently competent to participate.

. Petitioner was originally incarcerated for stabbing his wife. He apparently claimed that he had been subjected to a voodoo curse and blamed the "evil spirits” which he said inhabited his body for compelling him to stab his wife fatally.

. The State concedes that loss of good time and placement in solitary confinement (administrative segregation) constitute the deprivation of liberty interests sufficient to invoke due process inquiry, though they obviously differ with petitioner concerning the procedural safeguards to be afforded in prison disciplinary proceedings.

. The prisoner who is not competent to act as an advocate on his own behalf is entitled to assistance from someone who will perform the role of advocate. (See, Wolff v McDonnell, 418 US 539; Clutchette v Enomoto, 471 F Supp 1113, 1117 [on remand].) The role of counsel substitute which the court envisions is obviously broader than the role prescribed for employee assistants by the regulations of the Department of Correctional Services (7 NYCRR 251-4.2). There is no apparent reason why the regulations could not be amended to allow employee assistants to perform the role of advocate consistent with this opinion, Wolff, and the District Court opinion on remand in Clutchette.

. The concept of "insanity” is elusive. Although fundamental fairness requires consideration of a prisoner’s mental state in an appropriate case, it is not helpful to phrase our mandate in terms of "insanity” as a "defense”.

. Apparently the consideration of mental health in the prison disciplinary context is not a novel concept. (See, e.g., Matter of Batthany v Scully, 139 Misc 2d 605 [1988]; Matter of Trujillo v LeFevre, 130 Misc 2d 1016, 1017; see also, Hearing Officer’s Manual [governing disciplinary proceedings at Bedford Hills Correctional Facility, which contains the following directive: "If the misbehavior was caused by mental illness, the Misbehavior Report must be dismissed”].)

. Petitioner’s documented history of aberrant behavior and the psychiatric reports which have been submitted to the court raise troubling questions concerning whether petitioner should have been in the general prison population at the time of the September 1986 killing and what treatment, if any, petitioner received for his psychiatric difficulties while at Green Haven.

. The court has elected to convert this proceeding to a CPLR article 78 because the court views the central issue as whether the disciplinary determination is supported by substantial evidence. Proof of a prisoner’s mental state in an appropriate case is simply part of the body of evidence supporting a determination. The court is not deeming this proceeding an article 78 simply because petitioner, if successful, would not be entitled to immediate release from all confinement by virtue of his civil commitment. Rather, the court’s view of the instant controversy as basically entailing whether respondents’ determination is supported by substantial evidence makes the article 78 vehicle more appropriate.
Although the court would ordinarily transfer a proceeding such as this to the Appellate Division pursuant to CPLR 4704 (g) since a substantial evidence question is presented, transfer to the Appellate Division does not seem warranted in view of the court’s ruling on the threshhold legal issue of petitioner’s right to present evidence concerning his mental state. The court’s reversal and annulment of the determination based upon a point of law makes transfer to the Appellate Division inappropriate.