**John Lee LAYTON, Plaintiff,**

v.

**Charles L. WOLFF, Jr., Director, Nevada State Prisons, David E. Watson, Superintendent, Nevada State Maximum Security Prison, Michael Kneese, Lieutenant, Nevada State Maximum Security Prison, Defendants.**

**No. CIV–R–79–30–ECR.**

United States District Court,
D. Nevada.

June 15, 1981.

John Lee Layton, pro se.

Richard H. Bryan, Atty. Gen., D. G. Menchetti, Deputy Atty. Gen., Crim. Div., Carson City, Nev., for defendants.

## MEMORANDUM DECISION

EDWARD C. REED, Jr., District Judge.

John Lee Layton has sued Charles L. Wolff, the Director of the Nevada Department of Prisons, Captain David E. Watson and Lieutenant Michael Kneese, both of the Nevada State Prison (NSP). A portion of the complaint relating to claimed cruel and unusual punishment under the Eighth Amendment to the Constitution was dismissed by order of the Court. *See* Court's Order of September 10, 1979. The remaining issue is whether plaintiff's Fourteenth Amendment due process rights were violated by disciplinary and classification procedures of the prison officials and whether the Nevada Department of Prisons rules and regulations pertaining to such matters provide requisite due process rights, so as to be constitutional.

This civil rights complaint was brought pursuant to 42 U.S.C. § 1983. The plaintiff seeks injunctive, declaratory and monetary relief. The Court has jurisdiction to hear this claim under 28 U.S.C. § 1343.

A non-jury trial was held February 18, 1981.

Plaintiff is serving a sentence of life imprisonment without possibility of parole. He first entered the Nevada State Prison system in October of 1970 and since then, except for periods of time spent in the Northern Nevada Correctional Center and the Washoe County Jail, he has been an inmate continuously incarcerated at the Ne-

vada State Prison (NSP). NSP is the maximum security facility for the prison system.

On November 6, 1978, plaintiff was called by defendant Kneese, a lieutenant at NSP, to an area within the prison known as Seven Post. Defendant Kneese informed plaintiff that an allegation had been made that plaintiff and two other inmates had extorted funds from a third inmate. Defendant Kneese ordered plaintiff and the other two accused inmates placed in administrative segregation pending a formal disciplinary hearing.

John Barber, an investigations officer at NSP, was assigned to investigate the charges. Defendant Kneese participated in the investigation to the extent of assisting Mr. Barber in taking the statement of the complaining inmate, Severn Whitney. Whitney accused plaintiff and the other two inmates of forcing him to purchase, using Whitney's own funds, approximately $181 worth of groceries and other supplies from the prison canteen. Whitney claimed that he was threatened by the others with death or assault if he refused to make the purchases. It was claimed that plaintiff and his alleged cohorts provided a list of items which Whitney was required to buy for them. Mr. Barber also obtained documentation from the canteen which backed up Whitney's statement.

On November 9, 1978, defendant Kneese conducted a disciplinary hearing for plaintiff. As a result of said hearing, according to the applicable disciplinary regulations, plaintiff might have received minor discipline on the basis of less serious charges or might have been referred to a full Disciplinary Committee for consideration of more serious charges (referred to in the prison regulations as "major violations."). At this hearing defendant Kneese issued a notice of claimed violation of Regulation 306 of the Nevada Department of Prisons Code of Penal Discipline (CPD) for extortion. This is considered a major violation and therefore one to be dealt with by a full Disciplinary Committee. Plaintiff was retained in administrative segregation within the prison pending the hearing before the Disciplinary Committee.

On November 13, 1978, plaintiff appeared before the full Disciplinary Committee chaired by Howard Pyle (Director of Institutional Programs at the prison) and consisting of, in addition to Mr. Pyle, defendant Watson, and one other correctional officer of the prison. When it was discovered that defendant Kneese had participated in both the investigation and as hearing officer at the previous disciplinary hearing, the full Disciplinary Committee determined that the charges of violating Regulation 306 should be dismissed because the applicable disciplinary regulations of the prison provided that a single officer could not act in both capacities. However, plaintiff was told at that time that his case would nevertheless be referred to the prison Classification Committee for consideration of whether he should be retained in more secure housing than that to which he was assigned prior to the time he was first notified of the charges by defendant Kneese. He was also told by Mr. Pyle that the Classification Committee would meet with respect to his case on November 15, 1978, and that at that time he would be permitted to offer testimony and to call witnesses in his defense in respect to reclassification. Mr. Pyle does not recall whether plaintiff was told that he would have a right to substitute inmate counsel or a staff member to assist him at the Classification Committee hearing and it appears to the Court that no such notification was given.

On November 15, 1978, plaintiff was brought before the Classification Committee of the prison. The job of the Classification Committee is to determine such things as the level of security of the housing to which an inmate will be assigned, his adjustment to prison conditions, programs of rehabilitation for him, and such things as job assignments within the prison.

According to prison regulations the Classification Committee is not supposed to consider charges of misconduct as a basis for reclassifying an inmate as to the level of security of housing in which he is to be maintained, unless a decision unfavorable to

the inmate has been made by the Disciplinary Committee considering such misconduct. See Department of Prisons Procedure 205(8)(3). Nevertheless, the Classification Committee did consider the extortion charges which had been brought against plaintiff. They also considered the remainder of plaintiff's prison file including a record of numerous serious infractions of prison regulations by plaintiff over a long period of time during his incarceration. The Classification Committee decided that plaintiff should be retained in what is called administrative segregation on an indefinite basis. Plaintiff had previously been in the general population of the prison. Thus he was assigned to a significantly higher level of housing security and plaintiff's liberty was substantially curtailed. After that time, subject to periodic reclassification procedures, plaintiff was continued in administrative segregation, until he was reduced from close lockup to close custody on June 8, 1979. On March 28, 1980, he was returned to the general population. Plaintiff continued in the general population of the prison after that date until November 7, 1980, when he was returned to administrative segregation because of a subsequent infraction of the prison rules.

It is the position of the defendants that the rule forbidding the Classification Committee to consider misconduct where there has been no unfavorable finding to the inmate by the Disciplinary Committee applies only to what is called a post disciplinary classification hearing and does not apply to what is called a special review by the Classification Committee. Apparently it is common for the Disciplinary Committee, upon finding an inmate guilty of a claimed infraction, to refer such inmate to the Classification Committee for what is called a post disciplinary hearing. See Department of Prisons Procedure 205(9)(d). The Disciplinary Committee is given the authority to inflict a variety of punishments upon inmates who misbehave including placing them in more secure housing but only for limited periods of time. On the other hand, the Classification Committee (subject to required periodic reviews of the inmate's conduct and status) can place the inmate in more secure housing on an indefinite basis. See Department of Prisons Procedure 205(7). The defendants contend that while they could not consider the misconduct of plaintiff so far as it related to the Disciplinary Committee procedures, they could consider the facts underlying the misconduct along with all of the other information made available to them from plaintiff's inmate file.

Procedure 205(8) also requires that an inmate be given a written notice of a classification hearing together with written notification that he will be permitted to present evidence, testimony, produce witnesses and be entitled to be assisted by a staff member or substitute inmate counsel at such hearing. Except for a written notice as to the date of the Classification Committee hearing no written notice complying with this regulation was given plaintiff in respect to his reclassification, although, as mentioned above, the Court finds that oral notice was given complying with these requirements, except advice of right to assistance of inmate counsel or staff member at the hearing.

The defendants also contend that there was an added reason why they could consider the alleged misconduct and that was that the plaintiff had not been exonerated of the charges, but, rather, they had been dismissed on a technicality while in fact plaintiff was guilty of extortion.

They also contend that the primary reason why plaintiff was retained in administrative segregation was fear for the safety of the complaining inmate, Mr. Whitney, should plaintiff be returned to the general population where he would have been in a position to seek revenge upon Whitney for turning him in to the authorities. This would be a reason to retain plaintiff in segregation aside from whether plaintiff was guilty of the extortion charge.

The explanation of the prison officials that this was a special review rather than a post disciplinary hearing seems strained. In the view of the Court it was a post

disciplinary hearing. The hearing to be undertaken by the Classification Committee was clearly a result of the disciplinary proceedings and the decision to refer the matter to the Classification Committee was made at the hearing of the full Disciplinary Committee. The proposition that even though there has been no decision by the Disciplinary Committee "unfavorable to the inmate" that the claimed misconduct could be considered by the Classification Committee through consideration of the underlying factual allegations claims seems tenuous and in violation of the prison regulations.

■ Where charges such as this are dismissed on a technicality, however, there is doubt in the Court's mind that the Classification Committee should be forbidden from consideration of facts and data pertaining to an inmate in assessing whether he should be reclassified for more secure housing. The regulation which states that the Classification Committee should not consider misconduct unless there is an unfavorable determination for the inmate implies that a favorable determination could be considered and does not seem to foreclose the proposition that the Classification Committee could consider the claimed misconduct where there is no decision on the merits by the Disciplinary Committee.

There really was no decision by the full Disciplinary Committee as to the merits of the claimed misconduct of plaintiff, one way or another. A fair interpretation of the subject regulation would seem to indicate that if the inmate received a favorable determination by the Disciplinary Committee that the Classification Committee could not go on to reclassify the inmate who had received such favorable determination of his case anyway and, in essence, to rejudge (on a basis unfavorable to the inmate) the same thing which the full Disciplinary Committee had already determined in favor of the inmate.

■ The Court finds that the dismissal of the charges by the full Disciplinary Committee, on the technicality that defendant Kneese participated as both investigator and initial hearing officer, did not bar the Classification Committee from considering the claimed misconduct.

■■ The Court does not rule that the prison procedures duly adopted need not be followed. Rights created by the state carry the protection of the Fourteenth Amendment to our Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As the Supreme Court concluded in *Wolff* in regard to the state statutory right to good time credits in Nebraska:

"[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government, *Dent v. West Virginia*, 129 U.S. 114, 123 [9 S.Ct. 231, 233, 32 L.Ed. 623] (1889)." *Id.*, at 558, 94 S.Ct. at 2976.

The Supreme Court has consistently held that the interest such as protected in *Wolff*, which had its roots in state law, is within the purview of the Fourteenth Amendment, and that procedures appropriate under the circumstances are required by the due process clause to insure state-created rights are not arbitrarily abrogated. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), *citing Wolff supra*. Capricious or arbitrary application of the prison regulations will not be tolerated by the Court. *See Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

■ In the present case, the action by the Classification Committee was rationally based. It cannot be assumed that transfers are mindless events. Clearly an inmate's conduct, in general or specific instances, in the past or as anticipated in the future, is a factor to be considered by prison officials in deciding institutional placement. Deciding which prisoners go where in the system is a discretionary function of prison officials necessary to facilitate penal objectives. This discretion is not limited to instances of serious misconduct as there are other reasons beyond discipline for transfers including a prisoner's health, safety or other rehabilitative needs. *See generally Meachum, supra*.

The remaining question then is whether due process was afforded plaintiff in the hearings in respect to notice of and conduct of the hearings before the Classification Committee. The applicable regulations were not complied with because written notice in respect to the Classification Committee hearing was not given. However, there was written notice of the date of the hearing and there was an oral notice that plaintiff would be allowed to present testimony, evidence and witnesses if he chose to do so before the Classification Committee. Defendants contend that plaintiff was on notice or at least should have known about his rights in respect to the classification hearing because of wide distribution of various regulations within the prison and particularly to the various libraries and inmate law clerks. Plaintiff denies that prior to the subject hearing he had any information which would have placed him on notice of his rights and it appears very doubtful that plaintiff knew of such rights by virtue of the distribution of the written regulations throughout the prison. There is no evidence that a copy of the regulations was ever given to him or that anyone advised him personally of them.

Even though the prison regulations requiring written notice of the items mentioned above were not strictly complied with, they were substantially complied with. The basic requirements of due process were met at the Classification Committee hearing, because notice of the hearing and an opportunity to be heard were given plaintiff and he had an actual opportunity to participate in the hearing and present his side.

There does appear to be some due process requirement that the plaintiff be advised of his right to assistance of a staff member or substitute inmate counsel at a classification hearing, but not that the authorities are required to provide such staff member or inmate counsel to participate in the hearing, unless the inmate is incompetent or illiterate. *Cf. Clutchette v. Enomoto,* 471 F.Supp. 1113 (1979) (*Wolff v. McDonnell* provides that assistance need be provided only to incompetent or illiterate in disciplinary hearing—though all must be notified of right). There is no indication that the plaintiff was incompetent or illiterate or unable to adequately present his claim to the committee.

The Court here is thus presented with the regulation which provides for notice of and assistance of inmate counsel or staff. While there is no requirement under the Constitution that any such rights to notice and representation are to be afforded to prisoners who are to be reclassified, the regulation reflects, perhaps, a state created liberty interest of the type discussed in *Meachum, supra.* Assuming that a protected liberty interest exists, the extent of due process required will depend upon a consideration of the interest at stake, the probable value of the proposed procedural safeguard, and the burden on the government if a new procedure is required. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see Wolff, supra,* 418 U.S. at 560, 94 S.Ct. at 2976 (due process requirements must be considered in light of government function and private interest involved).

The interest at stake is whether, due to the prison procedure established, the plaintiff had a right to some sort of assistance at his classification hearing. The Court is uncertain as to what role this assistance would have at the hearing. There is no right to be classified at a certain level in the prison system. That the state is holding out the possibility of a desirable classification provides no more than a mere hope that a beneficial classification will be obtained. *Cf. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (Decisions of the executive branch, however serious their impact, do not automatically invoke due process protection, especially with respect to sensitive choices presented by administrative decision to grant parole release). The general interest here is no more substantial than the inmate's hope in *Meachum* that he would not be transferred to another prison, a hope which is not pro-

tected by due process. *Cf. Greenholtz, supra*, at 2105 (Possibility of parole not protected by due process under *Meachum, supra*, analysis). A prison official should have broad discretion in determining how his inmates are to be housed, limited only by the Eighth Amendment's protection from cruel and unusual punishment and the Fourteenth Amendment's right of equal protection. The Court is not presented with the Eighth Amendment issue and it appears that the plaintiff's classification was rationally based. Plaintiff's past and potential conduct caused his reclassification.

■ Furthermore, there is no showing that the lack of assistance at the hearing in any way prejudiced the plaintiff. In the present action he has demonstrated that he is both literate and competent. He is a long time resident of Nevada's prison system and has been subject to prior disciplinary and classification proceedings at the prison. He is articulate. The Court has not been convinced that assistance at the hearing would have, in any way, affected its outcome.

■ The classification hearing in question is not a criminal proceeding and the right to legal counsel is not required. *See Wolff, supra.* Yet even in criminal proceedings, effective assistance of counsel is not an absolute guarantee. *See Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978), *cert. denied* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). In *Cooper*, the Ninth Circuit found that a defendant's right to counsel was not violated and reversal was not mandated despite his attorney's errors in specific respects during the course of the trial where it appears that the defense was not prejudiced by the alleged inadequacies of counsel's performance. *Cooper, supra*, at 1332.

■ The fact that counsel was in fact present and acting freely on the defendant's behalf in *Cooper* and that in certain situations the absence of counsel mandates automatic reversal without a showing of prejudice is not a persuasive argument in this case. *See, e. g., Gideon v. Wainwright,*

372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (Reversal required where no defense counsel appointed to represent indigent); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (Reversal required where counsel denied inadequate opportunity to confer with defendant or prepare for trial); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (Reversal required where counsel required to serve defendants probably having conflicting interests). There is no Sixth Amendment right to counsel at a classification hearing. *Meachum, supra; Clutchette, supra.* The violation of this administrative regulation without a showing of prejudice or that the regulation was arbitrarily or capriciously abrogated does not provide a basis for Court action. The hearing's outcome would have been the same and the decision to reclassify was based on the sound, well reasoned, discretion of prison officials.

■ The Court is aware that certain minimal procedural requirements must be satisfied before parole or probation can be revoked. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation). These procedures include written notice of violations, disclosure of evidence against accused, opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, a neutral and detached hearing body, and a written statement by fact finders as to evidence relied on in revoking parole or probation. 408 U.S., at 489, 92 S.Ct., at 2604; *Gagnon, supra.* These are not the minimum requirements, however, of prison disciplinary hearings and even less so of prison classification hearings. *Meachum, supra.*

■ The Court recognizes that "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Wolff v. McDonnell, supra*, 418 U.S., at 560, 94 S.Ct., at 2977, *citing Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Thus, one can-

not automatically apply the constitutional guarantees of free citizens in an open society, or of probationers or parolees under limited restraints, to the very different situation presented by a disciplinary or classification hearing in a state prison. *Id.; See also Cooper v. Riddle,* 540 F.2d 731 (4th Cir. 1976) (*Wolff* requirements don't apply to classification hearings). Rehabilitative goals, as well as the more important factor of prison security, are elements absent in a less restrictive setting and must be balanced against the requirements of due process.

■ It would have made a clearer record and it certainly would be advisable for the prison officials to provide written notice of all of these matters as required by their regulations. However, the failure to do so, where plaintiff was advised of substantially all of his due process rights in advance of the hearing and where they were honored at the hearing, should not be a basis for this Court to intervene in the prison discipline and classification process absent a showing of prejudice. Such deviations do not reach constitutional proportions in this case. *See Wolff, supra; Meachum, supra.* The mere violation of regulations where there is substantial compliance with due process requirements does not provide a basis on which relief should be granted by this Court. *See Wolff, supra; Meachum, supra.*

■ The Court should give deference to the view of the prison authorities. The Supreme Court has admonished that federal courts should avoid enmeshing themselves in the minutiae of prison operations in the name of the Constitution. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Court is compelled to use great restraint before finding that state officials have acted unconstitutionally "... in discharging the unenviable task of keeping dangerous men in safe custody under humane conditions." *Spain v. Procunier,* 600 F.2d 189, 193 (9th Cir. 1979).

In retrospect a better record could have been made and the regulation could have been better worded. Prison officials could have and should have complied with their own regulations. However, the essential question for this Court is whether constitutional Fourteenth Amendment rights have been infringed upon and it does not appear that such has been the case here.

The within Memorandum Decision shall constitute findings of fact and conclusions of law for this case.

The Clerk of the Court shall therefore enter judgment in favor of defendants and against plaintiff, dismissing the action.