960 F.2d 153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edward F. WILLS, et al., Plaintiffs-Appellants
v.
Don HELLING, et al., Defendants-Appellees.
 No. 90-15951.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1992.*
Decided April 21, 1992.
 
 Before CHOY, FARRIS and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellants Edward F. Wills and Kenneth L. Krause appeal from the district court's denial of their claims under 28 U.S.C. § 1983 in which they alleged they were denied procedural due process when they were removed from their jobs in the license plate factory at the Nevada State Prison. We reverse and remand to the district court for further proceedings.
 
 
 3
 On September 21, 1988 a metal box large enough to conceal an inmate was found at the Nevada State Prison license plate factory in the area where appellants worked. Appellants immediately were placed in administrative segregation.[1] On September 21st each appellant received a notice that Classification Committee hearings were scheduled to determine what appellants' appropriate housing would be while their role in the escape attempt was investigated. On September 22nd at these hearings the committee decided that appellants would remain in administrative segregation pending complete investigation of the incident. On September 27th each appellant was notified that on September 29th he would appear before the Nevada State Prison Disciplinary Committee ("Disciplinary Committee") for a hearing to determine if he was guilty of involvement in the attempted escape. On September 29th at appellants' individual hearings that committee found that there was insufficient evidence to find either of them guilty of attempted escape.[2] Following the disciplinary hearings and without any additional notice, Krause and Wills again were brought before the Classification Committee on September 29th and 30th respectively at which time they permanently were removed from their license plate factory jobs and returned to the general prison population.
 
 
 4
 On February 16, 1989 Wills and Krause individually filed § 1983 claims. These subsequently were consolidated in early May 1989. On November 14, 1989 appellants moved for summary judgment and on January 24, 1990 appellees responded to that motion and filed a cross motion for summary judgment. On June 11, 1990 the district court granted appellees' motion and denied appellants' motion.
 
 
 5
 In their motion Wills and Krause argued that under Nevada Department of Prisons, Administrative Regulation 506, ("AR 506") (effec. Sept. 1, 1983), which is entitled "Classification and Management of Inmates: Reclassification Process," they not only had a protected liberty interest in their prison jobs but also a liberty interest in the procedures set forth in AR 506. Appellants contended that they were denied due process under AR 506 because they were not given twenty-four hour notice of and told the purpose of their respective January 29th or 30th classification hearings at which they were removed from their jobs, nor were they permitted to defend themselves at these hearings.
 
 
 6
 In granting appellees' motion for summary judgment the district court held that AR 506 created no liberty interest in appellants' prison jobs because under that section the Classification Committee was free to remove them from those positions for any or no reason. The court also held that without a substantive liberty interest to protect, the mere expectation of process is not protected under the Due Process Clause. Finally, the court held that AR 506 was "substantially complied with" and that appellants in fact received proper notice of their hearings and were permitted to present defenses at the hearings.
 
 I. Summary Judgment
 A. Standard of Review
 
 7
 We review a grant of summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractor's Ass'n, 809 F.2d 626, 629 (9th Cir.1987); Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Gizoni v. Southwest Marine, Inc., 909 F.2d 385, 387 (9th Cir.1990), cert. granted in part, 111 S.Ct. 1071 (1991); Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). In opposing a motion for summary judgment, the adverse party may not rest upon the mere allegations or denials of his pleading but must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.Pro. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 B. Due Process
 
 8
 (1) Liberty Interest in Prison Job or AR 506 Process
 
 
 9
 "A state creates a protected liberty interest [in its prison regulations] by placing substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 239 (1982); Kentucky Dep't of Correcs. v. Thompson, 490 U.S. 454, 462 (1988). Because AR 506 contains no standards or criteria to guide decisionmakers and permits denial of relief "for any constitutionally permissible reason or no reason at all," id., the district court properly held that it creates no liberty interest entitled to due process protection.
 
 
 10
 The district court, however, erred in ruling that absent a liberty interest in their license plate factory jobs appellants were not entitled to the processes provided in AR 506 because "[a]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." Olim, 461 U.S. at 250 & n. 12. A state's adoption of procedural guidelines, without more, does not indicate that the state chose to create a liberty interest in the procedures set out in those guidelines enforceable under the Due Process Clause. Hewitt v. Helms, 459 U.S. 460, 471 (1982); Olim, 461 U.S. at 250-51. However, if the state goes "beyond simple procedural guidelines ... [and] has used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed,.... this repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." Hewitt, 459 U.S. at 471-72; Thompson, 490 U.S. at 463-65; Washington v. Harper, 494 U.S. 210, 221 (1989); Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1990). Because the language of AR 506 is mandatory,[3] the district court erred in holding that appellants had no independent due process right to the procedures set out in that regulation.
 
 
 11
 (2) Propriety of Summary Judgment on Ground that AR 506's Procedures Substantially Were Satisfied
 
 
 12
 Since the State of Nevada created a protected liberty interest in the processes set out in AR 506, we must decide whether the district court properly granted summary judgment on the ground that the process afforded appellants substantially complied with AR 506's due process requirements.[4]
 
 
 13
 Neither appellees in their cross motion for summary judgment, nor the district court in its order granting that motion, said that appellants received written notice of the purpose of the September 29th and 30th classification hearings twenty-four hours prior to those hearings or that appellants had an opportunity to present a defense at the hearings themselves. Rather, appellees argued and the court entered summary judgment on the ground that, with respect to the Classification Committee actions on September 29th and 30th, AR 506 substantially was complied with because Wills and Krause received proper notices of the September 22nd and 29th hearings and were told orally at the disciplinary hearings that they would not be returning to their jobs and had an opportunity to present their defenses at the classification hearings.
 
 
 14
 Notice of the September 22nd classification hearings and the September 29th disciplinary hearings, however, in no way provided appellants with actual (or even constructive) notice that they were to be permanently removed from their jobs. Moreover, the very nature of those hearings meant that they could not offer an adequate opportunity for Wills and Krause to defend against permanent removal from their jobs.
 
 
 15
 Although "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact," Wolff v. McDonnell, 418 U.S. 536, 564 (1973), the notices of the September 22nd and 29th hearings failed to do either with respect to appellants' impending permanent removal from their prison employ at the September 29th and 30th hearings. These notices neither mentioned the September 29th and 30th classification actions, nor did they state that the proposed action or purpose of either hearing was to address appellants' permanent removal from their prison employment.
 
 
 16
 Rather, the notices of the September 22nd classification hearings stated that those hearings would address if Wills and Krause should remain in administrative segregation temporarily during the escape investigation and made no mention of permanent removal from their prison jobs.[5] Defs.' Resp.Attachs., at exs. 1 & 2. Similarly, the notices appellants received of the charges to be heard at their September 29th disciplinary hearings merely informed them that those hearings would decide whether they were guilty of the attempted escape and made no mention of later classification hearings to address reclassification out of their prison jobs. See id. at exs. 7 at 3; 8 at 3.
 
 
 17
 Similarly, what has been construed as appellants' substantial opportunity to defend themselves from permanent job removal during their administrative segregation and disciplinary hearings cannot reasonably be viewed as an adequate means of satisfying AR 506's requirement that they have an opportunity to present their defenses during the hearing at which they were removed from their jobs.
 
 
 18
 Because appellants only were notified that the September 22nd classification hearings were to determine if they temporarily should remain in administrative segregation until completion of the pending investigation, they could not have expected that their permanent prison jobs were at stake in these hearings and thus had no reason to raise their defenses with respect to permanent job removal in this context.
 
 
 19
 Moreover, although permanent removal from their jobs was arguably a foreseeable consequence of a guilty verdict at these disciplinary hearings, there are a number of reasons why these hearings did not afford a substantial opportunity to defend against this possibility. First, the Disciplinary Committee's responsibilities are distinct from those of the Classification Committee and, while the Disciplinary Committee's role is to decide whether provisions of the Nevada State Department of Prisons Code of Penal Discipline have been violated and to sanction such violations, it does not decide whether prisoners will be reclassified as a result of disciplinary proceedings. See generally Nev. Dep't of Prisons, Code of Penal Discipline ("Code of Penal Discipline") §§ I(A) (purpose and objective of disciplinary proceedings) & II(C) & (D) (provisions regarding proceedings in disciplinary hearings and Disciplinary Committee decisions).[6] Similarly, there is an entirely separate procedure set out for conducting formal disciplinary hearings which includes a disciplinary process structure and procedural safeguards distinct from those found in AR 506 for classification hearings. Compare AR 506 with Code of Penal Discipline §§ C(2) & (D)(1). Given these separate procedural mechanisms, appellants were reasonable in expecting a separate opportunity to defend against permanent removal from their jobs and in not feeling compelled to defend those positions before the Disciplinary Committee.
 
 
 20
 Finally, although there is one additional ground upon which we arguably could uphold the district court's grant of summary judgment, we find that because appellants have demonstrated that there is a genuine issue of material fact summary judgment under this legal theory also is precluded.
 
 
 21
 In Layton v. Wolff, 516 F.Supp. 629 (D.Nev.1981), the District Court for the District of Nevada held that the plaintiff prisoner's due process rights were not violated because, although prison regulations regarding Classification Committee hearings were not strictly complied with when reclassifying a prisoner into more secure housing, they were "substantially complied with" and thus the minimum constitutional requirements of due process had been met. Id. at 635.[7] In Layton the prisoner was placed in administrative segregation pending a formal disciplinary hearing on charges that he extorted funds from another inmate. He received proper notice of the disciplinary hearing and appeared before the Disciplinary Committee at which time the charges were dismissed. At that hearing he orally was advised that his case was being referred to the Classification Committee for consideration of whether, despite dismissal of the charges, he should be assigned to more secure housing, that the Classification Committee hearing would take place two days later, and that he would be permitted to offer his defense at that hearing. Id. at 632. He also received a written notice, but only regarding the date of the hearing. Id. The plaintiff subsequently was brought before the Classification Committee at which time he was assigned to administrative segregation on an indefinite basis. Id.
 
 
 22
 Here, in granting summary judgment for appellees, the district court noted that Wills and Krause were told orally at their disciplinary hearings that they were going to be removed from their jobs and that they officially were terminated from their jobs when they later appeared at the September 29th and 30th classification hearings. Assuming without deciding, that substantial compliance like that afforded in Layton meets the constitutional minimum due process requirements,[8] the unofficial oral statements regarding appellants' job termination at the disciplinary hearings--if they included explanation of the purpose of the hearings--and appellants' appearance at the later classification hearings--if they included an opportunity to defend against removal--could constitute substantial compliance with AR 506.
 
 
 23
 But in reviewing a grant of summary judgment we must view the evidence in the light most favorable to the nonmoving party, Anderson, 477 U.S. at 255; Tzung, 873 F.2d at 387, and take the facts as introduced in the affidavits of the party opposing the motion as true, resolving all doubts in their favor. McLaughlin v. Liu, 849 F.2d 1205, 1207-08 (9th Cir.1988); F.S. Smithers & Co., Inc. v. Federal Insur. Co., 631 F.2d 1364, 1366 (9th Cir.1980).
 
 
 24
 Appellees introduced some evidence that Wills and Krause were notified orally of the September 29th and 30th classification hearings during their disciplinary hearings, see Defs.' Resp.Attachs., Helling Affidavit at pp 5 & 6; exs. 7 at 1; 8 at 1, and that appellants were present and had an opportunity at least to speak at these hearings. Id. at exs. 3 & 4. In his affidavit Wills admits that at his disciplinary hearing on September 29th appellee Helling verbally told him that he was to appear before the Classification Committee the next day. Wills also states, however, that Helling refused to inform him of the purpose of that hearing.[9] Thus, although Wills received oral notice of the hearing twenty-four hours in advance there is a material issue of fact as to whether he was aware of the subject matter of the proposed action and the reasons for it. Krause's affidavit states that immediately following his disciplinary hearing, the same disciplinary committee members who had just found that there was insufficient evidence to support the attempted escape charges, held the classification hearing during which he was removed from his job. Krause Affid. at p 4. The affidavit further states that Krause received no other oral or written notice regarding the time or purpose of the classification hearing. Id. at pp 5 & 6. Krause's affidavit, thus, indicates that there is a material issue of fact as to whether he received any notice of the hearing.
 
 
 25
 Moreover, both affidavits contain specific facts indicating that there was a genuine issue of fact regarding appellants' opportunity to present defenses at these hearings. Wills's affidavit notes that "the committee told me that the decision to reclassify me out of my job program had already been made and that they did not want to hear anything I had to say." Wills Affid. at p 7. Similarly, Krause's affidavit states, "[t]he committee simply stated that the decision to classify me out of my job program had already been made and that there was nothing I could say to change it." Krause Affid. at p 7.
 
 
 26
 We therefore hold that, because appellants submitted evidence in the form of affidavits which set forth specific facts showing that there is a genuine issue of material fact regarding whether they even received proper oral notice of the Classification Committee hearings and whether they had an opportunity to defend themselves during those hearings, we are precluded from upholding the district court's grant of summary judgment on the theory that there was substantial compliance with AR 506.
 
 
 27
 Because the district court erred in granting summary judgment on appellants' due process claim under § 1983 this case is, REVERSED AND REMANDED IN PART.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Administrative segregation is a form of separation from the general prison population administered by the Classification Committee "when continued presence of the inmate in the general population would pose a threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution. Inmates pending investigation can also be included." Nev. Dep't of Prisons Administrative Regulation 507 (effec. Dec. 1, 1988)
 
 
 [2]
 Notices of the charges against appellants, however, were placed in their files and marked "informative only." Defs.' Response to Plaintiffs' Motion for Summary Judgment/Cross Motion for Summary Judgment, ("Defs.' Resp.Attachs."), Jan. 14, 1990, exs. 7 at 1; 8 at 1. This was done because, although the charges did not constitute a violation of the Nevada State code of Penal Discipline, the notices were considered relevant to appellants' housing and programming at the prison as prison officials considered it highly unlikely that appellants were unaware of construction of the box since it was built in the area where they worked. Id. at exs. 7-13
 
 
 [3]
 AR 506 provides, in pertinent part, that: "[i]nmates shall receive reasonable prior notice relating to the subject and purpose of the classification hearing for which they will appear;" AR 506(III)(B), "[a]t least twenty-four hours before the scheduled classification hearing, written notice of the proposed action and the reasons for it will be given to the inmate;" id. § (V)(1)(a), that "[a]n inmate shall be present at the classification hearing;" id. § (III)(C), and that "[w]hen the classification committee determines that the inmate is unable to prepare a defense against the proposed adverse action, or the situation is complex, assistance will be given to the inmate by referring the matter to his/her caseworker." Id. § (III)(C) (emphasis added)
 
 
 [4]
 The district court held that summary judgment for appellees was proper because, with respect to the September 29th and 30th Classification Committee hearings at which appellants permanently were removed from their jobs, "AR 506 was substantially complied with" and "[p]laintiffs' allegations that their due process rights were violated by a technical violation of AR 506 is without merit...."
 
 
 [5]
 Under Nevada's prison regulations prisoners placed in administrative segregation are not permitted to continue working in prison jobs. Nev. Dep't of Prisons, AR 520(V)(A)(1)(b). Thus, it could be argued that Wills and Krause should have been aware that their jobs were at stake when they received notice that the purpose of the September 22nd hearings was to continue their placement in administrative segregation. This argument, however, ignores the fact that the purpose of the September 22nd hearing on administrative segregation was to decide whether appellants' stay there would continue during the pending investigation. In other words, at best, the notice of this hearing apprised appellants that the hearing would result in their remaining temporarily in administrative segregation until the investigation was completed and that they necessarily would remain removed temporarily from their prison employment during that period as well. Notice of a hearing regarding temporary removal from a prison job is not substantial compliance with a requirement of notice of a hearing regarding permanent removal from that job
 
 
 [6]
 In fact, AR 506 provides that "[p]ost Disciplinary classification hearings shall be scheduled following a disciplinary hearing when the disciplinary committee has recommended an inmate for more secure housing or major change in program or custody." AR 506(C)(4). This apparently was the case here as the summaries of the disciplinary hearings for both Wills and Krause indicate that the Disciplinary Committee set a recommended post-disciplinary date for each prisoner. See Defs.' Resp. Attachs., exs. 7 at 1; 8 at 1. Thus, it is at these separate post disciplinary hearings where the Classification Committee decides the reclassification issue and where the prisoner defends against reclassification
 
 
 [7]
 The procedure contained AR 506 is almost identical to Procedure Number 205(8) which was at issue in Layton. In fact, AR 506 (in conjunction with a few other administrative regulations) superseded Procedure Number 205 effective September 1, 1983. Compare Nev. Dep't of Prison Proc. Manual, Proc. 205(8) (effec. May 22, 1978--Sept. 1, 1983) and AR 506. Procedure Number 205(8) required that an inmate be given written notice of a classification hearing and its purpose as well as written notice that he is permitted to present evidence, testimony, produce witnesses, and is entitled to assistance of a staff member or substitute inmate counsel at such hearings. Id. at 633
 
 
 [8]
 We need not reach the issue of whether substantial compliance with AR 506 of the kind upheld as constitutional by the district court in Layton would satisfy the minimum requirements of due process because we hold that there is a genuine issue of material fact as to whether the facts even demonstrate that there was compliance of this variety
 
 
 [9]
 Wills's affidavit states, "[w]hen I asked why the classification committee wanted to see me ... [he] stated 'you will find out tomorrow.' " Wills Affidavit at p 4. Hearsay testimony that may not properly be admitted if testified to at trial may not be set forth in an affidavit in support of a motion for summary judgment, Harkins Amusement Enter., Inc. v. General Cinema Corp., 850 F.2d 477, 490 (9th Cir.1988), cert. denied, 488 U.S. 1019 (1989); Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 667 (9th Cir.1980). Hearsay statements, however, that would be admissible at trial as exceptions to the hearsay rule may be contained in an affidavit. See United States v. Dibble, 429 F.2d 598, 602 (9th Cir.1970); Janich Bros., Inc. v. American Distilling Co., 570 F.2d 848, 859-60 (9th Cir.1977) (hearsay testimony inadmissible in response to motion for directed verdict because no exception to hearsay rule applicable). Even if no hearsay exception applies to the quotation contained in Wills's affidavit, we nonetheless properly may consider the statement as evidence that there is a material issue of fact regarding whether Wills received proper notice of the purpose of the September 30th classification hearing. Because appellees did not object to the inadmissible matters contained in the affidavit and move to strike those portions, they waived any right to object to their admissibility. Allen v. Scribner, 812 F.2d 426, 435 n. 18 (9th Cir.), amended, 828 F.2d 1445 (9th Cir.1987)